703 N.E.2d 594 (1998)
301 Ill. App.3d 401
234 Ill.Dec. 733
In re M.G., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
M.G., a Minor, Respondent-Appellant).
No. 1-97-1440.
Appellate Court of Illinois, First District, Fifth Division.
November 20, 1998.
*595 Sidley & Austin, Stephan V. Beyer, Tamar B. Kelber, Chicago, for Respondent-Appellant.
Richard A. Devine, State's Attorney of Cook County, Chicago (Renee Goldfarb, James E. Fitzgerald, Michelle Katz, of counsel), for Petitioner-Appellee.
Steven A. Drizin, Children and Family Justice Center of the Northwestern University Leal Clinic, Chicago, for amicus curiae.
Justice GREIMAN delivered the opinion of the court:
Respondent M.G., a 13-year-old, challenges his adjudication of delinquency and disposition pursuant to section 5-36 of the Juvenile Court Act of 1987 (commonly known as the Violent Juvenile Offender Act) (705 ILCS 405/5-36 (West 1996)), for aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 1996)). M.G. argues (1) that the mandatory disposition provision of the Violent Juvenile Offender Act violates the United States Constitution and the Illinois Constitution; (2) the State failed to provide sufficient notice of the proceedings to his father; and (3) the State failed to provide M.G. with adequate notice of its intent to prosecute him under the Violent Juvenile Offender Act. We affirm.
On October 15, 1996, a petition was filed for an adjudication of wardship alleging that on October 11, 1996, M.G. committed the offense of reckless discharge of a firearm in violation of section 24-1.5(a) of the Criminal Code of 1961 (720 ILCS 5/24-1.5(a) (West 1996)). The trial court first heard the matter that same day, with M.G. receiving legal representation from the Northwestern University Legal Clinic. The court questioned M.G. and he identified his mother, who was *596 present in court that day. M.G. identified his father as Albert G. M.G.'s mother added that the father was incarcerated, and M.G. indicated that his father was in "Pontiac." The petition includes the names of M.G.'s parents but lists Albert G.'s address as "unknown." However, there is handwriting on the document indicating "Pontiac." The court stated "Mother in court; certified mail to father."
At that initial hearing, the State requested leave to amend the petition to include a second count for aggravated discharge of a firearm. The court then asked M.G. if he understood this count and he said, "Yes." M.G. waived formal reading of petition.
On October 18, 1996, the court conducted an emergency hearing with only a representative of the State's Attorney's office being present. The State sought leave to file a notice of intent to prosecute M.G. as a violent juvenile offender. The Assistant State's Attorney indicated that he gave notice to M.G.'s attorneys via fax the day before the hearing. The attorney further stated:
"I have spoken to Northwestern Legal Clinic this morning. Sheryl Graves is not in town, and her partner on the case Angela [Coin] is also not in town. I spoke with a Steven Drizin * * * and he has faxed a note to me indicating that, in fact, their office was in receipt of the State's motion and notice of motion as of 1:09 p.m. yesterday * * *. However, Mr. Drizin also wanted this Court to be informed that in no way are they at this time conceding whether the service was proper nor timely, and wanted me to make that representation to the Court."
There is no indication that M.G. was present or absent from that hearing. The court held the matter over until October 22, 1996.
On October 22, 1996, Angela Coin of the Northwestern University Legal Clinic appeared on behalf of M.G. She moved to quash the State's notice of intent to file as a violent juvenile offender. She stated that on the afternoon before the date of the last hearing, the State faxed her office the notice. However, the two attorneys and the law students working on the case were not in town that day and did not receive the notice. The trial court denied the motion to quash the notice. M.G. then moved to dismiss the notice of intent to prosecute the minor as a violent offender.
On December 4, 1996,[1] the court heard the matter again. At that hearing, the Assistant State's Attorney stated, "I need to make a record that summons by certified mail was tendered to Albert [G.], the father of the minor respondent. I have received a green card. I'd like to make that of record and put it in the file." There was no objection.
On December 13, 1996, the parties presented argument on the motion challenging the constitutionality of the Violent Juvenile Offender Act. The court found it constitutional and denied the motion to dismiss. On January 14, 1997, a jury was selected, and on January 15, 1997, the jury heard the testimony of several witnesses. M.G.'s mother was present. The jury found M.G. delinquent by reason of aggravated discharge of a firearm.
On February 28, 1997, the trial court denied M.G.'s motions for a new trial and judgment notwithstanding the verdict. The court then began to conduct a dispositional hearing. The court recognized, however, that it had no discretion in selecting the appropriate disposition. The court stated it could consider evidence but, according to the statute, the disposition would be to commit M.G. to the Department of Corrections regardless of the evidence. The State tendered a verified statement indicating that M.G. was previously adjudicated delinquent for the offense of aggravated criminal sexual assault, a Class X felony, on March 8, 1996.
The trial court found that M.G. was served with written notice of the intent to prosecute under the Violent Juvenile Offender Act within the statutory time period; he was previously adjudicated delinquent for the offense of aggravated criminal sexual assault which, had he been an adult, would have been a Class 2 or greater felony involving the use or threat of physical force or violence on an individual; and he was adjudicated delinquent *597 for the subsequent offense of aggravated discharge of a firearm which, had he been prosecuted as an adult, would have been a Class 2 or greater felony involving the use or threat of physical force or violence against an individual. M.G. was adjudicated a violent juvenile offender and committed to the Department of Corrections until his twenty-first birthday.
This appeal is a case of first impression calling upon this court to examine the Violent Juvenile Offender Act. M.G. contends that the Violent Juvenile Offender Act's mandatory disposition provision violates the Illinois Constitution as well as the due process and equal protection clauses of the United States Constitution.
The Violent Juvenile Offender Act provides in pertinent part:
"§ 5-36. Violent Juvenile Offender.
(a) Definition. A minor having been previously adjudicated a delinquent minor for an offense which, had he or she been prosecuted as an adult, would have been a Class 2 or greater felony involving the use or threat of physical force or violence against an individual or a Class 2 or greater felony for which an element of the offense is possession or use of a firearm, and who is thereafter adjudicated a delinquent minor for a second time for any of those offenses shall be adjudicated a Violent Juvenile Offender if:
(1) The second adjudication is for an offense occurring after adjudication on the first; and
(2) The second offense occurred on or after January 1, 1995.
(b) Notice to minor. The State shall serve upon the minor written notice of intention to prosecute under the provisions of this Section within 5 judicial days of the filing of a delinquency petition, adjudication upon which would mandate the minor's disposition as a Violent Juvenile Offender.

(c) Petition; service. A notice to seek adjudication as a Violent Juvenile Offender shall be filed only by the State's Attorney.
The petition upon which the Violent Juvenile Offender notice is based shall contain the information and averments required for all other delinquency petitions filed under this Act and its service shall be according to the provisions of this Act.
No prior adjudication shall be alleged in the petition.
(d) Trial. Trial on the petition shall be by jury unless the minor demands, in open court, and with advice of counsel, a trial by the court without a jury.
Except as otherwise provided in this Section, the provisions of this Act concerning delinquency proceedings generally shall be applicable to Violent Juvenile Offender proceedings.
* * *
(f) Disposition. If the court finds that the prerequisites established in subsection (a) of this Section have been proven, it shall adjudicate the minor a Violent Juvenile Offender and commit the minor to the Department of Corrections, Juvenile Division, until his or her 21st birthday, without possibility of parole, furlough, or non-emergency authorized absence. However, the minor shall be entitled to earn one day of good conduct credit for each day served as reductions against the period of his or her confinement. The good conduct credits shall be earned or revoked according to the procedures applicable to the allowance and revocation of good conduct credit for adult prisoners serving determinate sentences for felonies.
For purposes of determining good conduct credit, commitment as a Violent Juvenile Offender shall be considered a determinate commitment, and the difference between the date of the commitment and the minor's 21st birthday shall be considered the determinate period of his or her confinement.
(g) Nothing in this Section shall preclude the State's Attorney from seeking to prosecute a minor as a habitual juvenile offender or as an adult as an alternative to prosecution as a Violent Juvenile Offender." (Emphasis added.) 705 ILCS 405/5-36 (West 1996).
*598 At the outset, we observe that there is "`a strong presumption of constitutionality'" that attaches to any legislative enactment and "`the burden rests upon the challenger to demonstrate its invalidity.'" In re S.G., 175 Ill.2d 471, 486, 222 Ill.Dec. 386, 677 N.E.2d 920 (1997), quoting Sanelli v. Glenview State Bank, 108 Ill.2d 1, 20, 90 Ill.Dec. 908, 483 N.E.2d 226 (1985). M.G. first challenges the constitutionality of the Violent Juvenile Offender Act's mandatory disposition provision.
The Illinois Constitution mandates that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const.1970, art. I, § 11. M.G. contends that the Violent Juvenile Offender Act violates this constitutional protection by requiring the juvenile court to commit a juvenile adjudicated under it to the Department of Corrections until his twenty-first birthday regardless of any other considerations. This argument is essentially the same as his argument that the same provision violates the due process clause of the United States Constitution. M.G. contends that by setting a mandatory disposition, regardless of mitigating circumstances, the Violent Juvenile Offender Act effectively eliminates the due process safeguard in the juvenile system that the courts are to serve the best interests of the minor child.
In People ex rel. Carey v. Chrastka, 83 Ill.2d 67, 46 Ill.Dec. 156, 413 N.E.2d 1269 (1980), the Illinois Supreme Court addressed several challenges to the then existing section of the Juvenile Court Act commonly known as the Habitual Juvenile Offender Act (Ill.Rev.Stat., 1980 Supp., ch. 37, par. 705-12, now 705 ILCS 405/5-35 (West 1996)). The supreme court considered three consolidated cases in which judges of the circuit court held the statute unconstitutional. The supreme court ruled that the statute did not violate the state or federal constitution and granted the State's petitions for writs of mandamus. Chrastka, 83 Ill.2d at 82, 46 Ill.Dec. 156, 413 N.E.2d 1269. The Habitual Juvenile Offender Act provided that any minor having been twice adjudicated delinquent for offenses which, had he been prosecuted as an adult, would have been felonies and who is thereafter adjudicated delinquent for a third time be adjudged an habitual juvenile offender. The trial court must commit an habitual juvenile offender to the Department of Corrections until his twenty-first birthday. Chrastka, 83 Ill.2d at 71-73, 46 Ill.Dec. 156, 413 N.E.2d 1269, quoting Ill.Rev.Stat., 1979 Supp., ch. 37, par. 705-12.
The Chrastka court rejected the minors' arguments that the Habitual Juvenile Offender Act violated the due process clause of the federal constitution and the mandate concerning penalties in our state constitution, stating:
"[T]he legislature has the authority to define offenses against the People and to determine sentences, and this authority, by definition, enables the legislature to establish minimum sentences. Such legislative action necessarily limits the inquiry and function of the judiciary in imposing sentences, but this alone does not render the legislation violative of the constitutional provisions upon which respondents rely. Any resulting diminution of the judiciary's role is adequately remedied by the legislature's clear and comprehensive treatment of the subject, and we cannot say that the means chosen by the legislature is not `"* * * reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare."'" Chrastka, 83 Ill.2d at 79, 46 Ill.Dec. 156, 413 N.E.2d 1269, quoting People v. Bradley, 79 Ill.2d 410, 417, 38 Ill.Dec. 575, 403 N.E.2d 1029 (1980), quoting Heimgaertner v. Benjamin Electric Manufacturing Co., 6 Ill.2d 152, 159, 128 N.E.2d 691 (1955).
The court further recognized that under the Habitual Juvenile Offender Act, a court is faced with a juvenile who has allegedly committed three offenses within a short period of time. The two predicate adjudications afforded the juvenile the opportunity to present mitigating evidence at a hearing where the trial judge could exercise his or her discretion in determining the appropriate disposition. Chrastka, 83 Ill.2d at 79, 46 Ill. Dec. 156, 413 N.E.2d 1269. The court determined that the legislature could conclude *599 that an individual who has committed three offenses has benefited little from the rehabilitative measures of the juvenile court and shows little prospect for restoration to meaningful citizenship within that system. Chrastka, 83 Ill.2d at 80, 46 Ill.Dec. 156, 413 N.E.2d 1269. Thus, the court did not find that the rehabilitative purposes of the system were forsaken. Rather, after the commission of the third serious offense, the interest of society in being protected from such conduct receives additional consideration. The court found it "entirely reasonable and constitutionally permissible" for the legislature to authorize the disposition specified in the Habitual Juvenile Offender Act. Chrastka, 83 Ill.2d at 80, 46 Ill.Dec. 156, 413 N.E.2d 1269.
M.G. contends that the supreme court's reasoning in Chrastka should not apply to the instant case because the Habitual Juvenile Offender Act mandates a disposition after there has been a pattern of conduct, that is, after two prior offenses. The Violent Juvenile Offender Act, on the other hand, imposes the disposition after only one prior offense. We find M.G.'s distinction between the two statutes unpersuasive. Chrastka establishes that neither of the constitutional provisions cited is violated merely because the legislature mandates a disposition in certain situations. While legislative action may limit the courts' discretion, it is not necessarily unconstitutional. The limitation of the courts' role can be remedied by the legislature's treatment of the subject. Indeed, the issues of seriousness of the offense and rehabilitation have apparently already been considered in the disposition set by the legislature in the Violent Juvenile Offender Act.
Under the Violent Juvenile Offender Act, the court is faced with a juvenile who has allegedly committed two very serious violent offenses within a short period of time. On the predicate offense, the juvenile had the opportunity to present mitigating evidence that allowed the trial judge to exercise his or her discretion in determining an appropriate disposition. While the Violent Juvenile Offender Act involves one less offense than the Habitual Juvenile Offender Act, as in Chrastka, the legislature could legitimately conclude that an individual who has committed two serious violent offenses has benefited little from the rehabilitative measures of the juvenile court system and exhibits little prospect for restoration to meaningful citizenship within that system. The rehabilitative purposes of the system are not forsaken but, after the commission of a second serious offense, the interest of society's protection receives additional consideration. We hold it constitutionally permissible for the legislature to authorize the disposition specified in the Violent Juvenile Offender Act.
Both M.G.'s brief and the amicus brief rely on other language in the Juvenile Court Act of 1987 (the Juvenile Court Act) (705 ILCS 405/1-1 et seq. (West 1996)) regarding its purpose and goals to support the contention that the Violent Juvenile Offender Act is unconstitutional. Delinquency proceedings are protective in nature and the Juvenile Court Act's purpose is to correct and rehabilitate, not to punish. In re W.C., 167 Ill.2d 307, 320, 212 Ill.Dec. 563, 657 N.E.2d 908 (1995). However, the Violent Juvenile Offender Act specifically instructs that other provisions in the Juvenile Court Act concerning delinquency proceedings are generally applicable to violent juvenile offender proceedings "[e]xcept as otherwise provided" in the Violent Juvenile Offender Act. 705 ILCS 405/5-36(d) (West 1996). Thus, there is no reason not to follow the mandatory disposition provision merely because other sections of the Juvenile Court Act may be contradictory. Furthermore, the scope and application of the Juvenile Court Act are defined solely by the legislature and while the Juvenile Court Act should be liberally construed, a reviewing court may not engage in judicial legislation by rewriting the Violent Juvenile Offender Act. See In re M.M., 156 Ill.2d 53, 66-67, 189 Ill.Dec. 1, 619 N.E.2d 702 (1993); see also S.G., 175 Ill.2d at 489, 222 Ill.Dec. 386, 677 N.E.2d 920, quoting M.M., 156 Ill.2d at 69-70, 189 Ill.Dec. 1, 619 N.E.2d 702 ("court may not seize upon `the best interests of the child mandate' to enlarge its statutory powers").
M.G. next argues that the Violent Juvenile Offender Act's mandatory disposition provision violates the equal protection clause of the United States Constitution. In Chrastka, *600 the court also considered an equal protection challenge to the Habitual Juvenile Offender Act's similar disposition provision and found no violation, stating:
"The apparent predominant purpose of the [Habitual Juvenile Offender] Act is to protect society from an individual who, having committed three serious offenses, would appear to have gained little from the rehabilitative measures of the juvenile court system. In furtherance of this purpose, the legislature has determined that an individual who is subject to the [Habitual Juvenile Offender] Act shall be confined until the age of 21. As a result, an habitual juvenile offender may be confined longer than one who is older, and it is alleged that this disparity in treatment adversely affects a juvenile's fundamental interest in liberty and is not justified by any compelling interest. We do not agree with either the suggested analysis or conclusion." Chrastka, 83 Ill.2d at 80, 46 Ill.Dec. 156, 413 N.E.2d 1269.
The Chrastka court determined that even if it relied on the compelling interest analysis, the interest in protecting society from an habitual juvenile offender was as compelling as the interest in protecting society from an habitual adult offender. Chrastka, 83 Ill.2d at 81, 46 Ill.Dec. 156, 413 N.E.2d 1269. The court noted that the states' broad authority to deal with adult recidivists has already been recognized. Chrastka, 83 Ill.2d at 81, 46 Ill.Dec. 156, 413 N.E.2d 1269, citing Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); Spencer v. Texas, 385 U.S. 554, 559-60, 87 S.Ct. 648, 651, 17 L.Ed.2d 606, 611 (1967). The Chrastka court did not find the disparity of the terms of confinement for habitual juvenile offenders that results from the variance in age of offenders invalidated the means chosen by the legislature to effectuate the purpose of the Habitual Juvenile Offender Act.
The Violent Juvenile Offender Act has the apparent purpose of protecting society from an individual who has committed two serious violent offenses involving the use or threat of physical force or violence against an individual or possession or use of a firearm. To further its purpose, the legislature determined that a violent juvenile offender should be confined until the age of 21. Like the Habitual Juvenile Offender Act, the interest in protecting society is compelling in cases involving such serious juvenile offenders, and we do not find the disparity resulting from the mandatory disposition to invalidate the statute. While M.G. argues the statutes are different because the Habitual Juvenile Offender Act applies where there has been three offenses, he does not provide a persuasive reason for this court to abandon the Chrastka court's analysis. Therefore, we affirm the trial court on this issue.
M.G. next contends that the trial court lacked jurisdiction to hear this case because the State failed to provide sufficient notice to M.G.'s father of the pending adjudication. The State argues that M.G. waived his right to argue that his father was not served. The record reveals that M.G. did not raise this issue to the trial court and therefore the issue could be deemed waived. See In re D.L., 299 Ill.App.3d 269, 233 Ill.Dec. 689, 701 N.E.2d 539 (1998) (where minor failed to raise issue in lower court, minor waived issue of lack of notice to custodial father, who lived with mother who was properly served with notice); see also In re J.P.J., 109 Ill.2d 129, 92 Ill.Dec. 802, 485 N.E.2d 848 (1985) (issue waived where minor failed to raise in trial court any question regarding the failure to identify or locate a noncustodial parent whose identity or address was unknown). However, we need not rely on waiver to find a basis for affirming the trial court.
A minor and his parents have a constitutional right of due process to receive adequate notice of juvenile proceedings. In re C.R.H., 163 Ill.2d 263, 270, 206 Ill.Dec. 100, 644 N.E.2d 1153 (1994). The State does not dispute that notice was required here. Rather, it contends that the record provides conclusive proof that M.G.'s father received notice of all of the proceedings in this case. We agree.
The Juvenile Court Act requires that the parents of a minor who are named as respondents in a petition for delinquency be issued summons. 705 ILCS 405/5-15(1) (West 1996). The Juvenile Court Act further provides *601 for notice by certified mail if service of the summons on a parent is not made within a reasonable time. 705 ILCS 405/5-16 (West 1996). "In such case the clerk shall mail the summons and a copy of the petition to that respondent by certified mail marked for delivery to addressee only. The court shall not proceed with the adjudicatory hearing until 5 days after such mailing. The regular return receipt for certified mail is sufficient proof of service." 705 ILCS 405/ 5-16(1) (West 1996).
The record reflects that at the hearing on October 15, 1996, M.G. identified his father. M.G.'s mother stated that the father was incarcerated and M.G. indicated that he was in "Pontiac." The petition lists the father's address as "unknown," but there is handwriting on the document indicating "Pontiac." The court then stated, "Mother in court; certified mail to father."
The record contains three green certified mail receipt cards addressed to Albert G., Illinois Department of Corrections, Pontiac, Illinois, sent from the clerk's office or the State's Attorney's office. The cards contained Albert G.'s inmate number. One has a delivery date of November 8, 1996, which indicates that the summons was sent to the father well in advance of the adjudicatory hearing in January. On December 4, 1996, the Assistant State's Attorney stated on the record that the summons was tendered by certified mail to Albert G. and the attorney offered the green card without objection.
A second green certified mail receipt card indicates a delivery date of January 30, and is postmarked January 30, 1997. This card was sent after the adjudicatory hearing, but before the disposition hearing, and presumably indicates the receipt of notice for the disposition hearing. However, the record also contains a document purporting to be an affidavit of service regarding the service of a summons on Albert G. and indicating that service of the summons was not made within a reasonable time. This affidavit is signed January 28, 1997. These documents suggest that an attempt was made on January 28, 1997, to serve Albert G. in person, but when this did not occur, the State sent the documents by certified mail.
Nevertheless, a third green certified mail receipt card indicates that Albert G. was sent documents. This card does not indicate a date of delivery but is date stamped February 6, 1997. This card does not have a signature of receipt. This card appears to indicate that documents were sent to M.G.'s father at that time, which was before the disposition hearing on February 28, 1997.
As the statute provides, a certified mail receipt is sufficient proof of service. M.G. has presented no grounds for concluding that these mail receipt cards are inaccurate or fraudulent. Based on the facts presented, we conclude that the minor's father was given sufficient notice of the proceedings.
M.G. also contends he is entitled to a new trial because the State failed to provide him with adequate notice of the supplemental petition. The record indicates, however, that M.G. and his mother were aware of the supplemental petition. Both were present at the hearing when the trial court granted leave to amend the petition to include the additional count. The trial court asked M.G. if he understood this second count and he said, "Yes." The Juvenile Court Act provides that "[t]he appearance of the minor's legal guardian or custodian, or a person named as a respondent in a petition, in any proceedings under this Act shall constitute a waiver of service of summons and submission to the jurisdiction of the court." (705 ILCS 405/5-15(7) (West 1996)); see also In re J.W., 87 Ill.2d 56, 62, 57 Ill.Dec. 603, 429 N.E.2d 501 (1981) (mother waived formal service of process and submitted to jurisdiction where she appeared in court and participated actively in the proceedings without objection); In re J.E., 285 Ill.App.3d 965, 221 Ill.Dec. 249, 675 N.E.2d 156 (1996) (no jurisdiction problem where mother was present at both adjudicatory and dispositional hearings, despite fact that service to mother was unsuccessful and she was not present at hearing on motion to suppress).
M.G.'s main contention is that he personally did not receive proper notice of the State's intent to prosecute him as a violent juvenile offender. The Violent Juvenile Offender Act provides that "[t]he State shall serve upon *602 the minor written notice of intention to prosecute under the provisions of this Section within 5 judicial days of the filing of a delinquency petition." 705 ILCS 405/5-36(b) (West 1996). The State maintains and the trial court found that the State complied with this section of the Violent Juvenile Offender Act because written notice was served on M.G.'s attorney by fax on October 17, 1996. M.G.'s counsel objected to this service but admitted that her office received the fax. The trial court denied the oral motion to quash the notice of intent, stating:
"[T]he point is that the legal clinic that you work for which represents the minor did receive notice by [fax]. You received notice on that date within the five days. The minor received notice. He was in court. I informed him of that."
M.G. contends this notification violated the statute because the first time he and his mother were aware of the intent to prosecute under the Violent Juvenile Offender Act was on October 22, 1996, which was more than five days after filing the petition. The portion of the transcript cited above suggests that M.G. was present at the October 18, 1996, hearing when the State filed its notice of intent to prosecute pursuant to the Violent Juvenile Offender Act. We note that there is nothing in the transcript from that day indicating whether M.G. was actually present.
Nevertheless, Supreme Court Rule 11(a) (145 Ill.2d R. 11(a)) provides that "[i]f a party is represented by an attorney of record, service shall be made upon the attorney." Thus, service of the notice on M.G.'s attorney rather than M.G. was sufficient.
Supreme Court Rule 11(b)(4) (145 Ill.2d R. 11(b)(4)) provides that service may be made "via facsimile machine to the office of the attorney * * * who has consented to receiving service by facsimile transmission." The record does not indicate whether M.G.'s attorney consented to service by fax. Even if the State's Attorney violated the rule regarding consent to serve notice via fax, it is undisputed that M.G.'s attorney's office received the fax transmission on October 17. M.G. had actual written notice within five days. Even if there may have been a failure to fully comply with the rule, we do not find reversible error here. M.G.'s attorney received actual notice within the time period. Further, even though this notice was received very close to the time of the hearing, there was nothing M.G. could have done to prevent the filing of the notice and he was still permitted to and did object to the propriety of prosecution under the Violent Juvenile Offender Act.
For the aforementioned reasons, we affirm the adjudication of delinquency and disposition.
Affirmed.
HOURIHANE, P.J., and HARTMAN, J., concur.
NOTES
[1] Although the transcript indicates this hearing occurred in 1997, this appears to be a typographical error. The proper date should be December 4, 1996.