**2017 IL 120796**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 120796)

*In re* DESTINY P., a Minor (The People of the State of Illinois, Appellant,
v. Destiny P., Appellee).

*Opinion filed October 19, 2017.*

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Kilbride, Garman, and Theis
concurred in the judgment and opinion.

Justice Burke dissented, with opinion.

## OPINION

¶ 1    This is a direct appeal by the State from an order of the Cook County circuit
court finding sections 5-101(3) and 5-605(1) of the Juvenile Court Act of 1987
(Act) (705 ILCS 405/5-101(3), 5-605(1) (West 2016)) unconstitutional as applied
to respondent, Destiny P. The trial court found that these sections, which do not

provide jury trials for first-time juvenile offenders charged with first degree murder, violate the equal protection clauses of the United States and Illinois Constitutions. See U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2. The trial court rejected respondent's argument that these sections were unconstitutional on due process grounds. Respondent cross-appeals this ruling. For the reasons that follow, we affirm the trial court's judgment rejecting respondent's due process challenge, and we reverse the trial court's judgment finding the statute unconstitutional on equal protection grounds.

¶ 2                                  BACKGROUND

¶ 3        On April 29, 2014, the State filed a petition for adjudication of wardship against respondent, Destiny P. The petition charged respondent, then 14 years old, with four counts of first degree murder, one count of attempted murder, one count of aggravated battery with a firearm, three counts of aggravated unlawful use of a weapon, and one count of unlawful possession of a weapon. Respondent did not have a criminal background.

¶ 4        Respondent moved for a jury trial. Respondent conceded that the Act does not afford a jury trial to first-time offenders charged with first degree murder but contended that this denial violated her constitutional rights in two respects. First, a denial of a jury trial violated her due process rights. Respondent acknowledged that both the United States Supreme Court and this court have previously held that the due process clause does not require jury trials for juvenile adjudications. See *McKeiver v. Pennsylvania*, 403 U.S. 528, 545 (1971); *In re Fucini*, 44 Ill. 2d 305, 308 (1970). However, respondent argued that the radical alteration of the Act in 1998 to make juvenile proceedings more like adult criminal proceedings means that due process now requires jury trials for juveniles charged with first degree murder. Second, respondent argued that denying a jury trial to juveniles charged with first degree murder violated the equal protection clauses of the United States and Illinois Constitutions. Respondent argued that first-time juvenile offenders charged with first degree murder are similarly situated to juvenile offenders charged under either of two recidivist statutes: the habitual juvenile offender (HJO) and the violent juvenile offender (VJO) provisions of the Act. 705 ILCS 405/5-815, 5-820 (West 2016). Respondent pointed out that there are three classes of juveniles who face

- 2 -

mandatory incarceration if adjudicated delinquent: (1) habitual juvenile offenders, (2) violent juvenile offenders, and (3) first-time offenders charged with first degree murder. Only the third class is not afforded the right to a jury trial. Thus, according to respondent, her equal protection rights would be violated if the court did not grant her request for a jury trial.

¶ 5    Following a hearing, the court granted respondent's motion. The court rejected respondent's due process argument. The trial judge explained that both the United States and Illinois Supreme Courts have repeatedly rejected the argument that due process requires jury trials in juvenile proceedings. The court stated that it was "far above [his] pay grade" to tell the United States and Illinois Supreme Courts what is correct and not correct.

¶ 6    The court agreed with respondent's equal protection argument. The court explained that it found *In re G.O.*, 304 Ill. App. 3d 719 (1999), persuasive. The court acknowledged that *G.O.* was not controlling because it had been vacated by this court on other grounds. See *In re G.O.*, 191 Ill. 2d 37 (2000). However, the court found *G.O.*'s equal protection analysis to be sound. The *G.O.* court found that juveniles charged with first degree murder are similarly situated to those charged under the HJO and VJO statutes because these three classes of offenders all face mandatory determinate sentences of confinement until the age of 21, with no possibility of parole for at least five years from the date of commitment. See *G.O.*, 304 Ill. App. 3d at 727. The *G.O.* court could discern no rational basis for denying a jury trial to first-time juvenile offenders charged with first degree murder while granting one to offenders charged under the VJO or HJO statutes. *Id.* Here, the trial court explained that it was not holding a statute unconstitutional because the Act was silent on whether or not minors in respondent's position are entitled to jury trials. Rather, the court was simply finding that it would violate respondent's equal protection rights to deny her a jury trial.

¶ 7    The State filed a motion to reconsider. In addition to disagreeing with the merits of the court's equal protection ruling, the State pointed out that the court's description of the Act's jury trial provision was incorrect. The State argued that the statute was not "silent" on whether minors in respondent's position are entitled to jury trials. Rather, the Act provides that trials in delinquency proceedings are by the court except where a jury trial right is specifically set forth (see 705 ILCS

- 3 -

405/5-605(1) (West 2016)), and there is no such right for first-time offenders charged with first degree murder. Thus, the State argued that the court was declaring the statute unconstitutional, even if the court did not believe that it was doing so. Accordingly, the State asked the court to amend its order to include the requisite findings under Illinois Supreme Court Rule 18 (eff. Sept. 1, 2006).

¶ 8        The court denied the State's motion to reconsider, although the court acknowledged that it had erred in stating that the Act was silent on whether first-time juvenile offenders charged with first degree murder have a right to a jury trial. The court agreed with the State that the Act specifically provides that there is no right to a jury trial unless that right is specifically granted and no such right is granted to minors in respondent's position. The court otherwise reaffirmed its oral ruling. The court again found that the due process argument was foreclosed by case law from this court and the United States Supreme Court.

¶ 9        The court now found, however, that the statute was unconstitutional as applied to respondent and any other first-time juvenile offender charged with first degree murder. The court found that respondent was similarly situated to juveniles charged under the HJO or VJO statutes because all three classes of offenders are subject to mandatory incarceration if found to be delinquent. The court found that any differences between the sentences the minors in each class could receive are minor and insignificant and that the salient point was that each class receives a determinate sentence to the Department of Juvenile Justice (DOJJ) until the age of 21. For three reasons, the court found it irrelevant that the HJO and VJO statutes were designed to deal with recidivist offenders. First, some recidivist juveniles could receive longer periods of confinement without being afforded a jury trial. An example would be minors on their second gun offense charged as Class 2 felons. Second, it makes little sense that a person with multiple nonlethal offenses would receive a jury trial when someone charged with first degree murder would not. Third, a recidivist history is meaningless without some consequence attached to it, and the consequence is mandatory incarceration. This is the same fate facing those adjudicated delinquent of first degree murder. According to the court, it is not the multiple offenses that trigger the jury trial right but the mandatory incarceration that follows. The court further explained that a minor adjudicated delinquent under the HJO or VJO statutes could actually spend less time incarcerated than a juvenile adjudicated delinquent of first degree murder and that it makes no sense that only

- 4 -

the former would be afforded a jury trial. The court explained that "similarly situated" does not mean "identically situated" and an equal protection argument does not fail simply because there are some differences between the groups. The court then explained that it agreed with *G.O.* that there was no rational basis for treating the classes differently. Accordingly, the court found that the relevant sections of the Act—sections 5-101(3) and 5-605(1)—violate the equal protection clauses of the United States and Illinois Constitutions as applied to respondent.

¶ 10                                ANALYSIS

¶ 11      The State appeals, arguing that the court erred in finding an equal protection violation. According to the State, the court erred in comparing respondent with others who are not similarly situated. The State contends that a first-time juvenile offender charged with first degree murder under the regular Department of Juvenile Justice provisions of the Act is not similarly situated to juvenile offenders charged with entirely different crimes and sentenced under either of two recidivist statutes, the HJO statute and the VJO statute. Alternatively, the State contends that, should this court find that respondent is similarly situated to juveniles charged with different crimes and tried under different statutes, then this court should conclude that the legislature had a rational basis for granting a jury trial right to one class and not the other. By way of cross-appeal, respondent argues that the due process clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2) require jury trials for juvenile offenders charged with first degree murder.

¶ 12                              *Equal Protection*

¶ 13      We address the State's appeal first. Statutes are presumed constitutional, and the party challenging the statute has the burden of demonstrating a clear constitutional violation. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 200 (2009). This court will construe a statute to affirm its constitutionality if reasonably possible and will resolve any doubt on the construction of a statute in favor of its validity. *People v. Boeckmann*, 238 Ill. 2d 1, 6-7 (2010). Our review of a constitutional challenge to a statute is *de novo*. *In re Lakisha M.*, 227 Ill. 2d 259, 263 (2008).

¶ 14    When evaluating equal protection claims, this court uses the same standards for both the United States and Illinois Constitutions. *Wauconda Fire Protection District v. Stonewall Orchards, LLP*, 214 Ill. 2d 417, 434 (2005). The equal protection clause guarantees that similarly situated individuals will be treated in a similar fashion unless the government can demonstrate an appropriate reason to treat them differently. *People v. Whitfield*, 228 Ill. 2d 502, 512 (2007). The equal protection clause does not forbid the legislature from drawing proper distinctions between different categories of people, but it does prohibit the government from doing so on the basis of criteria wholly unrelated to the legislation's purpose. *Wauconda Fire Protection District*, 214 Ill. 2d at 434. In cases where fundamental rights are not at issue, we employ rational basis scrutiny and consider whether the challenged classification bears a rational relationship to a legitimate governmental purpose.[1] *City of Urbana v. Andrew N.B.*, 211 Ill. 2d 456, 466 (2004). This review is limited and deferential, and the legislation will not be held to violate the equal protection clause if any set of facts can rationally be conceived to justify the classification. *Wauconda Fire Protection District*, 214 Ill. 2d at 434.

¶ 15    As we explained in *In re M.A.*, 2015 IL 118049, ¶ 25, a threshold matter in addressing an equal protection claim is ascertaining whether the individual is similarly situated to the comparison group. " 'Evidence of different treatment of unlike groups does not support an equal protection claim.' " *Id.* (quoting *In re Derrico G.*, 2014 IL 114463, ¶ 92). The determination of whether two classes are similarly situated is not made in the abstract. Rather, the court must consider the purpose of the particular legislation. *Id.* ¶¶ 26, 29. Two classes are similarly situated only when they are in all relevant respects alike. *Id.* ¶¶ 25, 33.

---

[1] We acknowledge that this court in *In re R.A.B.*, 197 Ill. 2d 358, 363 (2001), referred to a juvenile's right to a jury trial under the VJO statute as a fundamental right. However, the two cases that *R.A.B.* cited for this proposition, *People v. Smith*, 106 Ill. 2d 327, 333 (1985), and *People v. Taylor*, 291 Ill. App. 3d 18, 20-21 (1997), were adult criminal cases. In the adult criminal context, the United States Supreme Court has long held that the sixth amendment right to a jury trial is a fundamental right that is applicable to the states through the fourteenth amendment. *Duncan v. Louisiana*, 391 U.S. 145 (1968). By contrast, the Court has held that the constitution does *not* require jury trials in juvenile proceedings. *McKeiver*, 403 U.S. at 528. In Illinois, the right to a jury trial in some juvenile proceedings exists solely as a matter of legislative grace. See *Konetski*, 233 Ill. 2d at 204-05. Accordingly, it is not accurate to refer to a juvenile's statutory right to a jury trial under the HJO or VJO statutes as a fundamental right, and respondent concedes that no fundamental rights are at issue in this case.

¶ 16 Here, respondent's claim fails at the threshold step. Respondent cannot show that she is similarly situated to the comparison groups. The comparison respondent makes is between (1) first-time juvenile offenders charged with first degree murder and tried under the regular provisions of the Act and (2) recidivist juvenile offenders charged with entirely different crimes and tried under one of two recidivist statutes (the VJO statute or the HJO statute). The trial court noted that these are the only classes of juvenile offenders who face mandatory incarceration if adjudicated delinquent and the legislature has denied a jury trial only to the former. The trial court found that it made "little sense" that a minor who commits two violent but nonlethal offenses or a minor who commits three nonviolent offenses receives a jury trial while first-time offenders charged with first degree murder do not. The court also noted that juveniles sentenced under the HJO or VJO statutes could actually serve shorter sentences than a juvenile who commits first degree murder. The court was not concerned with the myriad differences between the classes, explaining that similarly situated does not mean "identically situated" and that the relevant common factor is the determinate sentence and commitment until the age of 21.

¶ 17 We disagree with the trial court's analysis. Respondent attempts a comparison between other offenders who are not similarly situated to her. The trial court is correct that similarly situated does not mean "identically situated." Nevertheless, we have held that the comparison groups must be "in all relevant respects alike." (Internal quotation marks omitted.) See *id.* That is clearly not the case here. The two classes are charged with different crimes, arrive in court with different criminal backgrounds, and are tried and sentenced under different statutes with distinct legislative purposes. Far from being "similarly situated," these two classes are comprehensively different. Accordingly, respondent cannot show an equal protection violation.

¶ 18 We have held that the similarly situated determination must be made in light of the purposes of the statutes at issue. Here, respondent will be tried under the regular DOJJ provisions of the Act. Although the Act was amended in 1998 to make juvenile proceedings more similar to criminal proceedings and to include a policy of holding juveniles accountable for their actions, the overriding purpose of the Act remains one of rehabilitation. This court explained in *People v. Taylor*, 221 Ill. 2d 157, 170 (2006), that "[t]he policy that seeks to hold juveniles accountable for their

actions and to protect the public does not negate the concept that rehabilitation remains a more important consideration in the juvenile justice system than in the criminal justice system and that there are still significant differences between the two." In *In re Rodney H.*, 223 Ill. 2d 510, 520 (2006) (quoting *In re W.C.*, 167 Ill. 2d 307, 320 (1995)), we reiterated that the 1998 amendments did not render the Act criminal in nature but rather " '[d]elinquency proceedings are *** protective in nature and the purpose of the Act is to correct and rehabilitate, not to punish.' " By contrast, the VJO and the HJO are recidivist statutes enacted to address a different class of juvenile offenders. The "legislative declaration" for the HJO and VJO provisions states that, "[t]he General Assembly finds that a substantial and disproportionate amount of serious crime is committed by a relatively small number of juvenile offenders." 705 ILCS 405/5-801 (West 2016). The purpose of the HJO is to "protect society from an individual who, having committed three serious offenses, would appear to have gained little from the rehabilitative measures of the juvenile court system" (*People ex rel. Carey v. Chrastka*, 83 Ill. 2d 67, 80 (1980)), while the purpose of the VJO is to protect "society from an individual who has committed two serious violent offenses involving the use or threat of physical force or violence against an individual or possession or use of a firearm" (see *In re M.G.*, 301 Ill. App. 3d 401, 409 (1998)). Thus, respondent is being tried under a statute with a legislative purpose entirely distinct from the purposes of the recidivist statutes that she uses as comparison groups. The legislature, in dealing with offenders who have gained little from the juvenile justice system's rehabilitative aims, has made HJO and VJO proceedings more like criminal proceedings and has afforded this class of juveniles a jury trial right. The legislature has *not* drawn distinctions based on criteria wholly unrelated to the legislation's purpose. See *Wauconda Fire Protection District*, 214 Ill. 2d at 434. Respondent cannot show an equal protection violation by comparing herself to these different classes of offenders.

¶ 19          Moreover, even if it were proper for respondent to compare herself to these distinct classes, her argument depends on her comparing herself to juveniles charged with entirely different crimes. First degree murder can serve as a triggering offense under either the HJO or VJO statutes. If respondent's situation is compared to that of a juvenile charged with first degree murder and tried under either the HJO or the VJO statute, her argument falls apart. This is so because a juvenile charged with first degree murder and tried under one of the two recidivist statutes faces

more severe sentencing consequences than a first-time juvenile offender charged with first degree murder. The first-time offender adjudicated delinquent of first degree murder, who is at least 13 years old, is committed to the DOJJ until his or her twenty-first birthday "without the possibility of aftercare release, furlough, or non-emergency authorized absence for a period of 5 years from the date the minor was committed," with any time spent in presentence custody credited toward the five-year period. 705 ILCS 405/5-750(2) (West 2016). If released from the DOJJ, the juvenile is then placed on aftercare release until the age of 21, unless it is terminated sooner. *Id.* By contrast, a juvenile adjudicated delinquent of first degree murder and sentenced under either the HJO or VJO statute is committed to the DOJJ until his twenty-first birthday, "*without possibility of aftercare release, furlough, or non-emergency authorized absence.*" (Emphasis added). 705 ILCS 405/5-815(f), 5-820(f) (West 2016). The HJO and VJO statutes provide for good conduct credit, and such credits are earned or revoked according to the "procedures applicable to the allowance and revocation of good conduct credit for adult prisoners serving determinate sentences for felonies." 705 ILCS 405/5-815(f), 5-820(f) (West 2016). The adult provision for first degree murder provides that "a prisoner who is serving a term of imprisonment for first degree murder *** shall receive no sentence credit and shall serve the entire sentence imposed by the court." 730 ILCS 5/3-6-3(a)(2)(i) (West 2016). Therefore, a juvenile sentenced for first degree murder under either the HJO or the VJO is ineligible for good conduct credit. Thus, recidivist juveniles charged with first degree murder are subject to a more severe sentence than a first-time juvenile offender charged with first degree murder. In other words, even if it were proper for respondent to compare herself to recidivist offenders and look solely at sentencing consequences, she is not similarly situated to a recidivist offender charged with first degree murder.

¶ 20    Respondent does not deny this reality, and thus she is faced with making her equal protection challenge based on a comparison of juveniles charged with entirely distinct criminal conduct. So not only does respondent allege that she is similarly situated to recidivist juveniles, she alleges that she is similarly situated to juveniles charged with different crimes. This is the same type of equal protection analysis that the *G.O.* court engaged in. The *G.O.* court compared (1) a first-time juvenile offender charged with first degree murder with (2) a juvenile charged with a home burglary after having two previous adjudications for grand theft and (3) a juvenile charged with robbery after previously being adjudicated delinquent of

robbery. *G.O.*, 304 Ill. App. 3d at 726. In *G.O.*'s example, the second offender is charged under the HJO statute, and the third is charged under the VJO statute. *Id.* The court noted that all three offenders face mandatory confinement in the Department of Corrections, Juvenile Division, until the age of 21, with no hope of parole or furlough for at least five years. Yet only the first offender is denied a jury trial. *Id.* The court found that all three offenders were similarly situated because of the sentencing consequences. The court found it irrelevant that two of the classes are recidivist offenders and did not address the fact that the classes are charged with different crimes. *Id.* at 727. The court explained that the HJO and VJO offenders in the above scenario are actually better off than the first-time offender charged with first degree murder because the former are entitled to receive day-for-day good conduct credit, while the latter is not. *Id.* After finding the classes similarly situated, the *G.O.* court could find no rational basis for treating them differently. *Id.* at 727-29. The trial court echoed this analysis and found that it made "little sense" to grant a jury trial to only the second and third classes. The trial court found that all of the differences between the classes were "superficial" and that the true basis for the classification is the sentence.

¶ 21 Here, we must reiterate the narrow focus of our analysis. The question before the court is not whether the procedures enacted by the legislature make sufficient sense or reflect the exact policy choices that the members of this court would have made. The narrow question before the court is whether the legislature violated the equal protection clauses of the United States or Illinois Constitutions by treating similarly situated juvenile offenders differently. This the legislature simply has not done. The "similarly situated" component of equal protection analysis does *not* involve identifying one factor that the classes have in common. Rather, as we have made clear, the classes must be "in all relevant respects alike." *M.A.*, 2015 IL 118049, ¶¶ 25, 33. In *M.A.*, this court rejected the very type of analysis used by the appellate court in *G.O.* and the trial court in this case. The *M.A.* court held unanimously that juvenile sexual offenders and juvenile violent offenders were not similarly situated simply because they both faced a registration requirement.[2] *Id.*

---

[2]Four justices specially concurred. The specially concurring justices agreed that the classes were not similarly situated but urged the legislature as a matter of policy to reexamine the Violent Offender Against Youth Registration Act and to consider allowing offenders required to register under that statute the same rights as juvenile offenders required to register under the Sex Offender

¶ 32. The appellate court had held that the appropriate class was juveniles who were required to register with law enforcement officials following a juvenile adjudication and the legislature had put a more onerous registration requirement on those juveniles required to register under the Violent Offender Against Youth Registration Act (Violent Offender Act) (730 ILCS 154/1 *et seq.* (West 2012)). *Id.* ¶ 27. This court reversed and explained that the appellate court had erred by finding the classes similarly situated when the two groups were required to register under different statutes addressing a different class of offender who had committed different types of offenses. *Id.* ¶¶ 29-34. This court explained that the "similarly situated" determination cannot be made in the abstract, and this court made it clear that "[s]imply declaring a group similarly situated does not make it so absent some evidence that the individuals are in all respects alike." *Id.* ¶¶ 29, 33. This court noted that the Violent Offender Act existed because the legislature had elected to deal separately with a class of offenders that it determined were not similarly situated to sexual offenders. *Id.* ¶ 32. The court explained that "[t]he Registration Act and the Violent Offender Act address qualitatively different types of offenders and qualitatively different types of offenses." *Id.* This court criticized the appellate court for ignoring the differences between the classes and finding them similarly situated based on nothing more than the conclusory statement that the relevant consideration is that both classes face a registration requirement. That is the exact same situation that we have here. The HJO and VJO statutes exist precisely because the legislature determined that it was necessary to address a class of offenders who are qualitatively different from other juvenile offenders, and it enacted procedures applicable to this class of juvenile offender. The trial court erred in ignoring these differences and finding the classes similarly situated simply because they share a postadjudication consequence. Juveniles with different criminal histories, who are charged with different crimes and are tried and sentenced under different statutes with distinct legislative purposes, are in no sense "in all relevant respects alike." Whether we agree with the legislature as a matter of *policy* that three nonviolent offenses or two violent offenses should entitle one to a jury trial, while a first offense of first degree murder does not, is not the question. The inquiry is whether the legislature has violated the constitution by treating similarly situated

Registration Act (730 ILCS 150/1 *et seq.* (West 2012)). *M.A.*, 2015 IL 118049, ¶¶ 75-81 (Burke, J., specially concurring, joined by Freeman, Kilbride, and Theis, JJ.).

individuals differently, and this the legislature simply has not done. Accordingly, we reverse the trial court's judgment finding sections 5-101(3) and 5-605(1) of the Act unconstitutional as applied.

¶ 22                                                    *Due Process*

¶ 23        Respondent argues by way of cross-appeal that, if this court reverses the trial court's finding on the equal protection claim, it should uphold the trial court's decision on the basis that denying her a jury trial violates the due process clauses of the United States and Illinois Constitutions. The trial court rejected this argument, finding that it was bound by a long line of authority from this court holding that the due process clause does not require jury trials in juvenile proceedings. Despite this line of authority, respondent argues that she raises an issue of first impression. Respondent contends that it is an open question whether, following the Juvenile Justice Reform Provisions of 1998 (Pub. Act 90-590 (eff. Jan. 1, 1999)), due process requires a jury trial for a juvenile facing mandatory incarceration because of a first degree murder charge. Respondent also contends that this court recognized in *Konetski*, 233 Ill. 2d at 205, that it is the severe deprivation of liberty from mandatory incarceration that triggers the right to a jury trial. According to respondent, the *Konetski* court recognized that such deprivation of liberty is why HJO and VJO offenders are afforded a right to a jury trial, and therefore due process requires that a first-time offender charged with first degree murder be afforded one too. We disagree.

¶ 24        We see no need to analyze this issue at length because this court recently thoroughly considered this issue in *In re Jonathon C.B.*, 2011 IL 107750, and determined that, even following the 1998 juvenile justice reform amendments, due process does not mandate jury trials for juveniles. In that case, we noted that this court had first rejected the argument that due process requires jury trials for juveniles in *Fucini*, 44 Ill. 2d 305, and that the United States Supreme Court rejected the same argument in *McKeiver*, 403 U.S. 528. This court then reviewed the post-*Fucini* case law and noted that this court had consistently adhered to *Fucini*, even after the 1999 amendments. *Jonathon C.B.*, 2011 IL 107750, ¶¶ 87-97. The court stated that it had already considered and rejected the argument that the 1998 amendments required a different result. After reviewing the relevant case law,

this court explained that it had "consistently and repeatedly rejected the argument that the 1999 amendments to the Act render delinquency adjudications the equivalent of felony convictions, so that juveniles have a constitutional right to a jury trial under the Act." *Id.* ¶ 97.

¶ 25 Respondent contends, however, that this court did not specifically consider the question of whether the shift in policy following the 1998 amendments now requires jury trials for juveniles charged with *first degree murder*. Respondent points out that in *Konetski*, 233 Ill. 2d at 204-05, this court explained that juveniles had been granted the right to a jury trial in extended jurisdiction juvenile prosecutions, habitual juvenile offender proceedings, and violent juvenile offender proceedings. The *Konetski* court explained that juveniles had been granted jury trials in these proceedings because of the severe deprivation of liberty that follows an adjudication of delinquency in those proceedings. *Id.* at 205. Respondent contends that juveniles charged with first degree murder suffer an equivalent deprivation of liberty and therefore due process demands that they be afforded jury trials also.

¶ 26 The problem with respondent's argument is that *Konetski* was not speaking of a due process right to a jury trial in these proceedings but a statutory one. *Id.* The court did not hold that due process required a jury trial in these other proceedings. Moreover, this court specifically considered whether the legislature's grant of jury trials in those situations could be the basis for holding that due process requires a jury trial in other situations and emphatically rejected that position:

> "In any case, the legislature's decision to grant juveniles the right to a jury trial in other circumstances does not bear upon the minor's procedural due process claim. Minimum procedural requirements are a matter of federal constitutional law, and the process due in a given situation is not controlled by state statutory provisions. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 *** (1985). The constitutional right to due process is not synonymous with compliance with state regulations. *Lyon*, 209 Ill. 2d at 278, citing *Loudermill*, 470 U.S. at 541 ***. Thus, the statutory provision of the right to a jury trial in other circumstances does not affect whether a jury trial is mandated here by the constitutional right to procedural due process." *Id.* at 205-06.

- 13 -

Thus, we reject respondent's argument that jury trials for juveniles are required as a matter of due process, and we affirm the trial court's judgment denying respondent a jury trial on this basis.

¶ 27                                CONCLUSION

¶ 28     We disagree with the circuit court's conclusion that sections 5-101(3) and 5-605(1) of the Act are unconstitutional as applied to first-time juvenile offenders charged with first degree murder. Respondent's equal protection argument fails because first-time juvenile offenders charged with first degree murder are not similarly situated to recidivist offenders charged with different crimes and prosecuted under different statutes with distinct legislative purposes. Additionally, due process does not provide an alternate rationale for upholding the trial court's order. This court has long held that due process does not require jury trials in juvenile proceedings, and this court has previously considered and rejected the argument that the 1998 juvenile justice reform amendments require a different conclusion. Moreover, the fact that the legislature has granted a jury trial in certain other circumstances has no bearing on whether the due process clause requires jury trials for juveniles charged with first degree murder. The judgment of the circuit court of Cook County is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

¶ 29     Affirmed in part and reversed in part.

¶ 30     Cause remanded.

¶ 31     JUSTICE BURKE, dissenting:

¶ 32     The circuit court held sections 5-101(3) and 5-605(1) of the Juvenile Court Act of 1987 (705 ILCS 405/5-101(3), 5-605(1) (West 2016)) unconstitutional as applied to first-time juvenile offenders charged with first degree murder because these provisions do not afford the juvenile offender a right to a jury trial. The majority reverses the judgment of the circuit court and, in so doing, holds in part the

1998 amendments to the Juvenile Court Act do not require the recognition of a right to jury trials for minors. I cannot agree.

¶ 33 For the reasons set forth in detail in my dissent in *In re Jonathon C.B.*, 2011 IL 107750, ¶¶ 178-217 (Burke, J., dissenting), I believe juveniles charged with criminal offenses that would be a felony if committed by an adult should have the right to a jury trial pursuant to the guarantees of article I, section 8, of the Illinois Constitution. Ill. Const. 1970, art. I, § 8. As I stated *In re Jonathon C.B.*:

"*** I believe that legislative changes to the Juvenile Court Act since [*In re*] *Fucini*[, 44 Ill. 2d 305 (1970),] and *McKeiver* [*v. Pennsylvania*, 403 U.S. 528 (1971),] were decided, particularly the 1998 revisions to the Juvenile Court Act of 1987, have placed juvenile offenders on par with adult offenders and, as a practical matter, have resulted in a convergence of the juvenile justice system with the adult justice system. The revisions to our Juvenile Court Act have turned juvenile delinquency proceedings into an adversarial system in which punishment of the minor and protection of society are the primary goals. The protective *parens patriae* ideals, which were the hallmark of the juvenile justice system which existed when *Fucini* and *McKeiver* were decided, have given way to a new reality—one in which juveniles are treated more like adult criminal defendants. I conclude, therefore, that when a minor is charged and tried in juvenile court for having committed an offense that would be a felony if committed by an adult, and the minor is subject to the possibility of being confined for more than six months, it can scarcely be denied that the delinquency prosecution is the legal equivalent of a criminal prosecution. Accordingly, it is my view that the right to jury trial, granted to an accused 'in criminal prosecutions' by article I, section 8, must apply to juveniles who are tried within the juvenile justice system on charges that they violated a criminal statue when an adult charged with the same offense would have such a right." *Id.* ¶ 217.

¶ 34 For these reasons along with the additional reasons espoused in my dissent in *Jonathon C.B.*, I would find respondent was entitled to a jury trial. Accordingly, I dissent from the majority opinion.

- 15 -