2023 IL App (4th) 220779
NO. 4-22-0779

FILED
August 31, 2023
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Boone County |
| COREY A. LEE, | ) | No. 18CF382 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | C. Robert Tobin III, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Lannerd and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1        Following a bench trial with stipulated evidence, the trial court found defendant, Corey A. Lee, guilty of aggravated driving under the influence (DUI) of cannabis, resulting in the deaths of two people (625 ILCS 5/11-501(a)(7), (d)(1)(F) (West 2018)). The court sentenced defendant to six years in prison. Defendant appeals, arguing that section 11-501(a)(7) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(7) (West 2018)) is facially unconstitutional because it irrationally treats individuals who possess a medical cannabis card differently from those who do not possess such card. Defendant also contends the court should have exercised its discretion pursuant to section 11-501(d)(2)(G) of the Vehicle Code (625 ILCS 5/11-501(d)(2)(G) (West

2018)) and section 5-4-1(c-1.5) of the Unified Code of Corrections (730 ILCS 5/5-4-1(c-1.5) (West 2022)) to impose a sentence other than imprisonment. We affirm.

¶ 2                                I. BACKGROUND

¶ 3        Around 6:30 a.m. on March 26, 2018, defendant drove a Ford F-550 truck westbound on Bloods Point Road in rural Boone County. He was not licensed to drive a vehicle that size. Defendant fell asleep and failed to stop at a stop sign at Stone Quarry Road. Traveling somewhere between 40 and 55 miles per hour, defendant struck a southbound Dodge Dakota that had the right of way. The two occupants of the Dodge died. There is no evidence in the record that first responders saw signs of defendant being impaired. However, as captured by a squad car camera, defendant told his uncle, who was a volunteer firefighter responding to the scene of the accident, "there's no way I'm passing a drug test."

¶ 4        Within two hours of the accident, defendant voluntarily provided blood and urine specimens for analysis. He had a delta-9-tetrahyrocannabinal (THC) concentration in his blood of 6.5 nanograms per milliliter, plus or minus 0.6 nanograms per milliliter. Defendant did not possess a medical cannabis card pursuant to the Compassionate Use of Medical Cannabis Pilot Program Act (Medical Cannabis Act) (410 ILCS 130/1 *et seq.* (West 2018)).

¶ 5                                A. Charges

¶ 6        On November 1, 2018, a grand jury returned a 19-count indictment. We mention only the charges on which the State proceeded to trial. Count I alleged defendant committed aggravated DUI because he drove a motor vehicle while he had a whole-blood delta-9-THC concentration of at least five nanograms per milliliter, in violation of section 11-501(a)(7) of the Vehicle Code (625 ILCS 5/11-501(a)(7) (West 2018)), and such violation proximately caused two deaths. Counts II and III contained similar allegations but identified the victims separately. Counts

VI and VII alleged defendant committed reckless homicide (720 ILCS 5/9-3(a) (West 2018)) by disobeying a stop sign. Counts XII, XIII, and XVIII charged defendant with willfully operating a commercial motor vehicle while fatigued (49 C.F.R. § 392.3 (2021); 625 ILCS 5/18b-108(b), (d) (West 2018)). Counts XII and XIII alleged resulting deaths; count XVIII did not.

¶ 7                                B. Constitutional Challenge

¶ 8            Defendant filed a motion to declare section 11-501(a)(7) of the Vehicle Code unconstitutional, both facially and as applied to his circumstances. That statute provided that a person shall not drive or be in actual physical control of any vehicle under the following circumstances:

> "[T]he person has, within 2 hours of driving or being in actual physical control of a vehicle, a [THC] concentration in the person's whole blood or other bodily substance as defined in paragraph 6 of subsection (a) of Section 11-501.2 of this Code. Subject to all other requirements and provisions under this Section, this paragraph (7) does not apply to the lawful consumption of cannabis by a qualifying patient licensed under the [Medical Cannabis Act] who is in possession of a valid registry card issued under that Act, unless that person is impaired by the use of cannabis." 625 ILCS 5/11-501(a)(7) (West 2018).

In turn, section 11-501.2(a)(6) of the Vehicle Code referenced "either 5 nanograms or more of delta-9-[THC] per milliliter of whole blood or 10 nanograms or more of delta-9-[THC] per milliliter of other bodily substance." 625 ILCS 5/11-501.2(a)(6) (West 2018). Defendant argued, *inter alia*, that section 11-501(a)(7) violated the equal protection clauses of both the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2) by treating medical cannabis card holders differently from non-card holders. Defendant alleged that the

statute's delta-9-THC thresholds for non-card holders did not scientifically correlate to impairment. As part of his motion, defendant submitted a report from his expert, Dr. James O'Donnell, an associate professor of pharmacology at Rush University Medical Center. According to that report, defendant told O'Donnell he had a long history of smoking marijuana and last did so 27 hours before the motor vehicle accident. O'Donnell opined that defendant was not impaired when the accident occurred.

¶ 9    The trial court held an evidentiary hearing on defendant's motion, primarily to address the as-applied constitutional challenge defendant abandons on appeal. The parties' experts presented competing views about whether, and at what levels, the presence of delta-9-THC in one's system indicates impairment. The experts also disagreed whether defendant's delta-9-THC level indicated recent versus more remote use of cannabis.

¶ 10    The trial court denied defendant's motion, determining there was a rational basis for distinguishing medical cannabis card holders from non-card holders. Because we will review that ruling *de novo* (*In re Destiny P.*, 2017 IL 120796, ¶ 13), we will not unduly prolong this opinion by detailing the court's reasoning. The court denied defendant's motion to reconsider.

¶ 11                                    C. Trial

¶ 12    The matter proceeded to a short bench trial with stipulated evidence. In closing argument, defense counsel reiterated his contention that the pertinent subsection of the aggravated DUI statute was unconstitutional. Defense counsel also argued that defendant acted neither recklessly nor willfully when he fell asleep and ran the stop sign. The trial court found defendant guilty of three counts of aggravated DUI but not guilty of reckless homicide or willfully operating a commercial motor vehicle while fatigued. The court determined that counts II and III merged into count I for purposes of sentencing. As part of its explanation for its ruling regarding the

reckless homicide counts, the court found that the State failed to prove beyond a reasonable doubt that defendant was impaired by, or even tired from, cannabis at the time of the accident. The court also emphasized the lack of evidence that defendant had used cannabis on the morning of the accident. With respect to the driving-while-fatigued counts, the court found there was "insufficient evidence that the defendant knew he was so tired before the incident that he should have pulled over to rest rather than continuing to operate his vehicle."

¶ 13                                    D. Sentencing

¶ 14         The presentence investigation report (PSI) showed the following. Defendant was 33 years old, married, and had two children, ages 12 and 13. Defendant worked for the same company since 2007 as an equipment operator. He was the sole financial provider for his family, as his wife was a stay-at-home mother who homeschooled one of their children. Defendant had no history of juvenile delinquency. Defendant received 18 months of conditional discharge in both 2007 and 2010 for possessing drug paraphernalia—apparently, marijuana pipes. Defendant reported a long history of using cannabis, but he claimed he had not smoked since the motor vehicle accident.

¶ 15         Although not mentioned in the PSI, defendant's driving abstract showed he was also convicted of driving with a suspended license in 2010. The record does not indicate the basis for that suspension, but the prosecutor told the trial court the suspension had not been related to a DUI offense.

¶ 16         At the sentencing hearing, the decedents' family members read victim impact statements. The State did not present any aggravating evidence. Defendant presented testimony from two work colleagues, who attested to his work ethic, character, and that he passed all random company drug tests following the motor vehicle accident. In his statement in allocution, defendant

apologized to the victims' family. He said there had "not been one hour of any day" when he had not thought about the pain he caused.

¶ 17     Aggravated DUI resulting in two or more deaths is a "Class 2 felony, for which the defendant, unless the court determines that extraordinary circumstances exist and require probation, shall be sentenced to[ ] *** a term of imprisonment of not less than 6 years and not more than 28 years." 625 ILCS 5/11-501(d)(2)(G)(ii) (West 2018). Section 5-4-1(c-1.5) of the Unified Code of Corrections, which went into effect on July 1, 2021 (Pub. Act 101-652, § 20-5 (eff. July 1, 2021) (adding 730 ILCS 5/5-4-1(c-1.5)), provides:

> "Notwithstanding any other provision of law to the contrary, in imposing a sentence for an offense that requires a mandatory minimum sentence of imprisonment, the court may instead sentence the offender to probation, conditional discharge, or a lesser term of imprisonment it deems appropriate if: (1) the offense involves the use or possession of drugs, retail theft, or driving on a revoked license due to unpaid financial obligations; (2) the court finds that the defendant does not pose a risk to public safety; and (3) the interest of justice requires imposing a term of probation, conditional discharge, or a lesser term of imprisonment. The court must state on the record its reasons for imposing probation, conditional discharge, or a lesser term of imprisonment." 730 ILCS 5/5-4-1(c-1.5) (West 2022).

¶ 18     Defense counsel argued the circumstances justified imposing a sentence other than imprisonment pursuant to the statutes quoted above. The prosecutor, by contrast, requested a prison sentence "closer to the maximum." The prosecutor contended, in part, that section 5-4-1(c-1.5) of the Unified Code of Corrections does not apply to the offense of aggravated DUI resulting in two deaths.

¶ 19    The trial court took the matter under advisement and issued a written sentencing decision on June 23, 2022. The court first considered whether this case involved "extraordinary circumstances" requiring probation. 625 ILCS 5/11-501(d)(2)(G) (West 2018). The court explained that "[i]t appears that the legislature desired to have this type of offense result in a mandatory sentence to the Department of Corrections." To that end, the court noted that *People v. Winningham*, 391 Ill. App. 3d 476, 483 (2009), declared that the statute's "clear purpose was to substantially limit the discretion that a trial court possesses to impose a sentence of probation when a defendant's DUI offense proximately caused the death of another person." The court also noted that *People v. Vasquez*, 2012 IL App (2d) 101132, ¶ 59, said that extraordinary circumstances are ones that are "unusual" rather than "ordinary." To that end, the court in *Vasquez* related that the dictionary defines "extraordinary circumstances" as " 'a highly unusual set of facts that are not commonly associated with a particular thing or event.' " *Vasquez*, 2012 IL App (2d) 101132, ¶ 59 (quoting Black's Law Dictionary 260 (8th ed. 2004)).

¶ 20    Applying those principles to the facts at hand, the trial court wrote:

"While the defendant has raised many issues throughout the litigation, they mainly arise out of a disagreement with the law as written as opposed to the particular circumstances of the defendant or the nature of the offense. The defendant had consumed enough cannabis at the time he killed two community members that he met the level of intoxication criminalized by the legislature. While he has a minimal criminal history and he appears to be a hard worker and good family member, the Court hopes that this is not 'extraordinary'; rather the Court believes that this is the norm in our society. Most of our community members are good people who work hard and are valuable parts of their family unit. As the

- 7 -

*Vasquez* court stressed, '[U]nder section 11-501(d)(2)(G), there is a *presumption of incarceration* that may, in the trial court's discretion, be overridden; it may not, however, be overridden lightly.' [(Emphasis in original.) *Vasquez*, 2012 IL App (2d) 101132, ¶ 64.]"

¶ 21    The trial court continued:

"[T]he main issue with the sentence is with the prudence of the legislature in enacting the statute rather than how it is applied to the defendant as a person. At the end of the day, the legislature determined that there is a danger to the community when a person consumes cannabis and operates a motor vehicle with five nanograms or more in his/her system. When that same person causes the death of two persons in the operation of his/her vehicle at a time that he/she has that level of cannabis in their system, the legislature demands that person should receive a sentence to the Department of Corrections. While the defendant has flushed out [*sic*] in the proceedings some short comings [*sic*] of the statute[,] these short comings [*sic*] are well within the scope of the legislative branch. It is not for the Court to legislate from the bench. The defendant is the same as most of the members of our community; he is normally a law-abiding, hard working person who is an important part of his family. There is simply nothing extraordinary about the defendant or the nature of this offense. Therefore, the Court finds that the statutory exception to a mandatory [Department of Corrections] sentence does not exist."

¶ 22    The trial court then turned its attention to section 5-4-1(c-1.5) of the Unified Code of Corrections, which the court characterized as "another escape hatch for certain offenses that otherwise required mandatory prison." The court noted there was no legislative history or appellate

- 8 -

decision providing guidance. The court believed it was "questionable" whether the offense of aggravated DUI resulting in multiple deaths fell within the scope of section 5-4-1(c-1.5). However, the court did "not need to make this determination," as the court found that the "interest of justice" (730 ILCS 5/5-4-1(c-1.5) (West 2022)) did not require a sentence less than six years in prison. In the court's view, "[w]hatever this term ['interest of justice'] means, it does not seem to be a lower threshold to meet than 'extraordinary circumstances.' " The court reiterated that defendant primarily attacked "the wisdom and propriety of the [DUI] statute itself." The court added that "[a]ny finding by this Court that 'the interest of justice' requires a community based sentence or lower prison term would be the Court legislating from the bench," which the court was "not willing to do."

¶ 23        Having determined that neither "extraordinary circumstances" nor the "interest of justice" required a sentence other than imprisonment, the trial court asserted that "defendant must be sentenced to the Department of Corrections[,] with the range being 6-28 years." The court indicated that it considered the relevant evidence and criteria. The court sentenced defendant to six years in prison. The court denied defendant's motion to reconsider. Defendant timely appealed.

¶ 24                            II. ANALYSIS

¶ 25                          A. Equal Protection

¶ 26        On appeal, defendant first contends that section 11-501(a)(7) of the Vehicle Code is facially unconstitutional because it violates equal protection. Before reciting the parties' respective positions, we will provide some background about the development of Illinois's DUI cannabis laws.

¶ 27                          1. *DUI Cannabis Laws*

- 9 -

¶ 28        Effective July 1, 1990, the legislature prohibited driving with any amount of cannabis in one's system "resulting from the unlawful use or consumption of cannabis." Pub. Act 86-1019 (eff. July 1, 1990) (adding Ill. Rev. Stat. 1991, ch. 95½, ¶ 11-501(a)(5)). Courts held that this zero-tolerance policy was constitutional. See *People v. Fate*, 159 Ill. 2d 267, 271 (1994) (holding that the "absolute bar against driving a motor vehicle following the illegal ingestion of any cannabis" was "a reasonable exercise of the police power of the State in the interest of safe streets and highways"); *People v. Gassman*, 251 Ill. App. 3d 681, 692-93 (1993) (rejecting an equal protection challenge to the statute's regulation of "unlawful" consumption of cannabis and other substances, determining that (1) intentional users were not similarly situated to inadvertent users and (2) the legislature had a rational basis for distinguishing between the two classes). Effective January 1, 1999, the legislature moved the prohibition against driving with any amount of cannabis in one's system from section 11-501(a)(5) of the Vehicle Code to section 11-501(a)(6). Pub. Act 90-779 (eff. Jan. 1, 1999) (amending 625 ILCS 5/11-501).

¶ 29        Effective January 1, 2014, the legislature authorized the medicinal use of cannabis pursuant to the Medical Cannabis Act. Pub. Act 98-122 (eff. Jan. 1, 2014) (codified at 410 ILCS 130/1 *et seq.*). The legislature found that cannabis was beneficial in "treating or alleviating the pain, nausea, and other symptoms associated with a variety of debilitating medical conditions, including cancer, multiple sclerosis, and HIV/AIDS." 410 ILCS 130/5(a) (West 2014). The legislature expressed that "State law should make a distinction between the medical and non-medical uses of cannabis." 410 ILCS 130/5(g) (West 2014). Accordingly, the purpose of the Medical Cannabis Act was "to protect patients with debilitating medical conditions, as well as their physicians and providers, from arrest and prosecution, criminal and other penalties, and

property forfeiture if the patients engage in the medical use of cannabis." 410 ILCS 130/5(g) (West 2014).

¶ 30     The Medical Cannabis Act allowed "qualifying patients" to obtain a registry identification card. 410 ILCS 130/55(a) (West 2014). " 'Qualifying patient' " meant "a person who has been diagnosed by a physician as having a debilitating medical condition." 410 ILCS 130/10(t) (West 2014). The legislature provided a list of medical conditions that would be considered debilitating and authorized the Illinois Department of Public Health to add to that definition. 410 ILCS 130/10(h), 45 (West 2014). As part of an application for a medical cannabis card, an applicant was required to submit a "written certification" from a physician (410 ILCS 130/55(a)(1) (West 2014)) attesting that the patient (1) "is likely to receive therapeutic or palliative benefit from the medical use of cannabis to treat or alleviate the patient's debilitating medical condition or symptoms associated with the debilitating medical condition," (2) has a particular "debilitating medical condition," and (3) is "under the physician's care for the debilitating medical condition." 410 ILCS 130/10(y) (West 2014). (Prior to defendant's motor vehicle accident, the legislature amended the statute regarding the contents of the "written certification," most notably by eliminating the first requirement. See Pub. Act 99-519 (eff. June 30, 2016) (amending 410 ILCS 130/10(y)).)

¶ 31     A patient registered pursuant to the Medical Cannabis Act could not be arrested or prosecuted for possessing an "adequate supply" of cannabis. 410 ILCS 130/25(a) (West 2014). Generally, an adequate supply meant "2.5 ounces of useable cannabis during a period of 14 days and that is derived solely from an intrastate source." 410 ILCS 130/10(a)(1) (West 2014). The Medical Cannabis Act limited the places where card holders could possess or use cannabis. For

example, a card holder could not use cannabis in a motor vehicle. 410 ILCS 130/30(a)(3)(D) (West 2014).

¶ 32        The legislation creating the Medical Cannabis Act also amended the DUI law. Pursuant to section 11-501(a)(6) of the Vehicle Code, the general rule remained that it was illegal to drive with any amount of cannabis in one's system "resulting from the unlawful use or consumption of cannabis." Pub. Act 98-122 (eff. Jan. 1, 2014) (amending 625 ILCS 5/11-501(a)(6)). However, the legislature added the following sentence to section 11-501(a)(6):

> "Subject to all other requirements and provisions under this Section, this paragraph (6) does not apply to the lawful consumption of cannabis by a qualifying patient licensed under the [Medical Cannabis Act] who is in possession of a valid registry card issued under that Act, unless that person is impaired by the use of cannabis." Pub. Act 98-122 (eff. Jan. 1, 2014) (amending 625 ILCS 5/11-501(a)(6)).

¶ 33        Effective July 29, 2016, the legislature decriminalized small amounts of cannabis. Specifically, pursuant to the Cannabis Control Act (720 ILCS 550/4(a) (West 2018)), possessing up to 10 grams of cannabis would be a civil violation rather than a Class C misdemeanor. Pub. Act 99-697 (eff. July 29, 2016) (amending 720 ILCS 550/4(a)). Simultaneously, the legislature amended section 11-501(a)(6) of the Vehicle Code to remove the categorical prohibition against persons lacking a medical cannabis card driving with cannabis in their systems. Pub. Act 99-697 (eff. July 29, 2016) (amending 625 ILCS 5/11-501(a)(6)). A new subsection provided that a person shall not drive or be in actual physical control of any vehicle while that person has a delta-9-THC concentration of either 5 nanograms per milliliter of whole blood or 10 nanograms per milliliter of another bodily substance. Pub. Act 99-697 (eff. July 29, 2016) (adding 625 ILCS 5/11-501(a)(7)). However, this provision would "not apply to the lawful consumption of cannabis by a qualifying

patient licensed under the [Medical Cannabis Act] who is in possession of a valid registry card issued under that Act, unless that person is impaired by the use of cannabis." Pub. Act 99-697 (eff. July 29, 2016) (adding 625 ILCS 5/11-501(a)(7)).

¶ 34 In June 2019, the legislature enacted the Cannabis Regulation and Tax Act. Pub. Act 101-27 (eff. June 25, 2019) (adding 410 ILCS 705/1-1 *et seq.*). Pursuant to this legislation, beginning on January 1, 2020, it would be legal for individuals over 21 years of age to possess and consume specified quantities of cannabis. Pub. Act 101-27 (eff. June 25, 2019) (adding 410 ILCS 705/10-5(a)(1), 10-10). Despite the legalization of some quantities of cannabis, section 11-501(a)(7) of the Vehicle Code still provides that individuals with medical cannabis cards may be prosecuted for DUI cannabis only if they are impaired, whereas individuals without cards are subject to the thresholds mentioned above. 625 ILCS 5/11-501(a)(7) (West 2022).

¶ 35 2. *The Parties' Arguments*

¶ 36 Defendant maintains that medical cannabis card holders are similarly situated with non-card holders. Defendant reasons that the two groups "use and are affected by cannabis similarly and, thus[,] pose the same potential danger to the public." According to defendant, "distinguishing between card holders and non-card holders in no way furthers the goal of safer roads." In defendant's view, "[i]f it is rational to prohibit driving with over 5 ng/ml of cannabis in one's system, it is not rational to then allow it for another group who will have precisely the same presumed detrimental affect [*sic*] on traffic safety." Defendant cites *Love v. State*, 517 S.E.2d 53 (Ga. 1999), in which the Supreme Court of Georgia held that a DUI statute violated equal protection by providing different standards for legal cannabis users and illegal users.

¶ 37 Defendant devotes a substantial portion of his argument to refuting the notion that section 11-501(a)(7) of the Vehicle Code rationally distinguishes between the lawful and unlawful

use of cannabis. Defendant seems to concede that such distinction provided a rational basis for the 2014 version of Illinois's DUI law. However, defendant proposes that "such a distinction is no longer necessary" once the legislature amended the DUI law in 2016 to allow non-card holders to drive with up to a specified amount of delta-9-THC in their systems. Defendant also emphasizes that the legislature legalized cannabis in 2020. Although that occurred after defendant's motor vehicle accident, defendant submits that this change in the law "conclusively demonstrates that [lawful versus unlawful use] is *not* the basis for distinguishing card holders from non-card holders[,] as both groups are now lawful users," and yet the DUI statute continues to treat the groups differently. (Emphasis in original.)

¶ 38        In defending the constitutionality of the statute, the State argues that recreational cannabis users are "in a different class from" (*i.e.*, not similarly situated to) medicinal users. The State notes that medical cannabis cards are intended for people with debilitating medical conditions, and such users are limited in the amount of cannabis they may legally possess. By contrast, recreational cannabis is "uncontrolled and without professional advice and supervision."

¶ 39        The State also proposes that the legislature had a rational basis to distinguish between the two groups. According to the State, "[t]he legislature balanced two legitimate purposes, permitting compassionate use of medical cannabis while simultaneously ensuring roadway safety." The State posits that "[t]he legislature could deem medical use of cannabis to be in moderation as directed for relief from symptoms of debilitating illness, while recreational users are more likely to use greater amounts of cannabis to achieve a high that poses an increased threat to roadway safety." The State contends that "[a] lower-tolerance standard is a rational way to address the higher risk posed by non-medical use."

¶ 40 Finally, the State maintains that defendant's conviction would not have to be vacated if we determined that the 2016 public act creating section 11-501(a)(7) of the Vehicle Code is unconstitutional. The State reasons that the effect of finding the amendment facially unconstitutional would be to leave in force the pre-2016 zero-tolerance law, which defendant violated by driving with any concentration of delta-9-THC in his system.

¶ 41                                                                     3. *Analysis*

¶ 42 Legislative enactments carry "a strong presumption of constitutionality," and we must resolve all doubts in favor of upholding the legislation. *People v. Esposito*, 121 Ill. 2d 491, 497 (1988). The party challenging the legislation must rebut this presumption and "introduce evidence which demonstrates that the statute is unconstitutional." *Esposito*, 121 Ill. 2d at 497. A statute is facially unconstitutional only where "there is no set of circumstances under which the statute would be valid." *People v. Villareal*, 2023 IL 127318, ¶ 14. We review *de novo* the trial court's ruling regarding the constitutionality of a statute. *Destiny P.*, 2017 IL 120796, ¶ 13.

¶ 43 Our analysis of defendant's equal protection claim is identical under the United States and Illinois Constitutions. *Arvia v. Madigan*, 209 Ill. 2d 520, 536 (2004). Equal protection requires the government to deal in a similar manner with individuals who are similarly situated. *People v. Shephard*, 152 Ill. 2d 489, 499 (1992). Thus, "a threshold matter in addressing an equal protection claim is ascertaining whether the individual is similarly situated to the comparison group." *Destiny P.*, 2017 IL 120796, ¶ 15. "Two classes are similarly situated only when they are in all relevant respects alike." *Destiny P.*, 2017 IL 120796, ¶ 15. Rather than considering "in the abstract" whether two classes are similarly situated, we "must consider the purpose of the particular legislation." *Destiny P.*, 2017 IL 120796, ¶ 15.

¶ 44    Where, as here, the statute does not distinguish between individuals based on a suspect classification, we apply rational basis review. *Shephard*, 152 Ill. 2d at 500. Under that test, "a statutory classification need only be rationally related to a legitimate State goal." *Shephard*, 152 Ill. 2d at 500. When considering whether there is a rational basis for a statute, we do not consider the wisdom of the statute or "whether it is the best means to achieve the desired results." *Shephard*, 152 Ill. 2d at 503. Rather, our review is "limited and generally deferential" to the legislature. *Shephard*, 152 Ill. 2d at 502. "If we can reasonably conceive of any set of facts to justify the statutory classification, we will uphold the statute." *Arvia*, 209 Ill. 2d at 537.

¶ 45    Defendant relies in part on changes in the law that occurred after his motor vehicle accident in 2018. However, "[w]e construe statutes according to their intended construction when they were passed." *People v. Minor*, 2019 IL App (3d) 180171, ¶ 25; see *People v. Rogers*, 2022 IL App (3d) 180088-B, ¶ 20 (analyzing the constitutionality of the DUI statute that was in effect "at the time of defendant's accident"). Accordingly, we will focus on the constitutionality of the DUI cannabis law at the time of defendant's accident, without consideration of the subsequent legalization of cannabis for nonmedical use.

¶ 46    We hold that section 11-501(a)(7) of the Vehicle Code did not violate equal protection at the time of defendant's motor vehicle accident. Card-holding medical cannabis users were not similarly situated to non-card holders. Pursuant to the Medical Cannabis Act, only people who suffered from certain debilitating medical conditions (410 ILCS 130/10(t) (West 2018)) and who had a physician's certification (410 ILCS 130/55(a)(1) (West 2018)) could obtain a card. The legislature found that cannabis was beneficial in "treating or alleviating the pain, nausea, and other symptoms associated with" various medical conditions. 410 ILCS 130/5(a) (West 2018). Card holders were limited in the amount of cannabis they could legally possess. 410 ILCS 130/25(a)

(West 2018). By contrast, cannabis was illegal for nonmedical use. Thus, the legislature saw fit to distinguish between those who had documented medical reasons for using cannabis and those who did not. 410 ILCS 130/5(g) (West 2018). Defendant does not question or challenge the legislature's finding that cannabis served legitimate medical purposes for some people. Rather, defendant emphasizes that there is no difference between card holders and non-card holders in terms of how they use and are affected by cannabis. However, we cannot say that someone who used cannabis legally in 2018 for a debilitating condition was "in all relevant respects" like a person who used cannabis recreationally and illegally. See *Destiny P.*, 2017 IL 120796, ¶ 15.

¶ 47          Even if the two classes were similarly situated, there was a rational basis for treating the classes differently. Had the legislature not subjected medical cannabis users to DUI cannabis convictions only for driving impaired, card holders might risk committing a DUI offense every time they operated a vehicle. The legislature reasonably balanced the interest in allowing cannabis for medicinal purposes against the DUI statute's general goal of promoting traffic safety. In 2018, this need to balance interests was not present for non-card holders, as such persons could not legally use cannabis. Defendant seems to presume the legislature could have but one objective in crafting the DUI statute—promoting traffic safety. In defendant's view, distinguishing between card holders and non-card holders does not promote traffic safety, so there is no rational basis for the distinction. Defendant overlooks that "[l]egislation often has multiple purposes whose furtherance involves balancing and compromise by the legislature." *Crusius v. Illinois Gaming Board*, 216 Ill. 2d 315, 329 (2005). "For a provision in a law to pass the rational basis test, it does not have to promote all of the law's disparate and potentially conflicting objectives." *Crusius*, 216 Ill. 2d at 329.

¶ 48       Defendant seems to concede there was a rational basis for the 2014 version of the DUI statute, which imposed a zero-tolerance rule for non-card holders while allowing card holders to drive so long as they were not impaired by cannabis. Defendant contends that the "need" for this disparate treatment disappeared in 2016, when the legislature allowed non-card holders to drive with up to specified amounts of delta-9-THC in their systems. This argument is unpersuasive, as we are reviewing the rationality of the law, not its necessity. As demonstrated by the parties' experts' opinions in this case, there may be conflicting views about the correlation between impairment and the presence of delta-9-THC in one's system. However, the legislature is entitled to make laws " 'based on rational speculation unsupported by evidence or empirical data.' " *Heller v. Doe*, 509 U.S. 312, 320 (1993) (quoting *Federal Communications Comm'n v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993)). " 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' " *Heller*, 509 U.S. at 321 (quoting *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69-70 (1913)). Additionally, the legislature may pursue reform one step at a time. *Esposito*, 121 Ill. 2d at 503. The 2016 amendment to the DUI statute was a step toward leniency for recreational cannabis use at a time when the legislature was not yet willing to legalize the substance for nonmedical purposes. We determine that, even after the 2016 amendment to the DUI statute, there was a rational basis for treating card holders who legally used cannabis differently from non-card holders who used cannabis illegally. Disparate treatment was rational because the legislature found that cannabis served legitimate medical purposes for one group but not the other.

¶ 49       Defendant relies on the Supreme Court of Georgia's decision in *Love*, which struck down a Georgia DUI law that distinguished between legal and illegal use of cannabis. We deem *Love*'s analysis unpersuasive. The court reasoned that the DUI statute violated equal protection

because (1) the statute was intended to ensure public safety and (2) "the effects of legally-used marijuana are indistinguishable from the effects of illegally-used marijuana." *Love*, 517 S.E.2d at 57. However, the court in *Love* did not consider whether medical cannabis patients who used the substance legally were similarly situated to other users. The court also did not consider whether the legislature rationally could have determined there were more interests at stake than merely ensuring safe roads.

¶ 50    Accordingly, we hold that the trial court properly rejected defendant's facial constitutional challenge to section 11-501(a)(7) of the Vehicle Code.

¶ 51                    B. Challenges to the Sentence

¶ 52                    1. *"Extraordinary Circumstances"*

¶ 53    Defendant argues that the trial court abused its discretion when it found that "extraordinary circumstances" that would require probation did not exist. 625 ILCS 5/11-501(d)(2)(G) (West 2018). Defendant addresses in detail two cases the trial court discussed in its ruling: *Winningham*, 391 Ill. App. 3d 476, and *Vasquez*, 2012 IL App (2d) 101132. Defendant asserts that those cases "arguably stand for the proposition that 'extraordinary circumstances' will not be found based solely on the mitigating circumstances of a defendant's life, no matter how remarkable." However, defendant contends that the defendants in *Winningham* and *Vasquez* were more culpable than he is, as those defendants were impaired by alcohol and drove recklessly. According to defendant, his circumstances are distinguishable from *Winningham* and *Vasquez*, because (1) there was no evidence he was impaired by cannabis at the time of the accident, (2) he did not drive recklessly, and (3) he did not make any "conscious choices" that caused the accident. Defendant further proposes that "[t]he fact that he met the statutory definition of the offense while not engaging in the kind of conscious recklessness the DUI statute is designed to prevent is itself

an 'extraordinary circumstance.' " Defendant suggests that deterrence should not be a significant factor here, as "[t]he only lesson to be learned from [his] sentence is that if one both drives and uses cannabis in their life, it would behoove them to obtain a medical marijuana card."

¶ 54       The State responds that the trial court properly found the case did not involve "extraordinary circumstances."

¶ 55       A challenge to whether extraordinary circumstances exist and require probation for an aggravated DUI offense resulting in death is essentially a claim that the sentence is excessive. See *People v. Hill*, 2012 IL App (5th) 100536, ¶ 28 ("The extraordinary circumstances required for probation are matters for the trial court's discretion."). We cannot alter a sentence unless the trial court abused its discretion, which means that the "sentencing decision is 'fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it.' " *People v. Lawson*, 2018 IL App (4th) 170105, ¶ 28 (quoting *People v. Ramos*, 353 Ill. App. 3d 133, 137 (2004)). More specifically, a sentence within statutory limits is excessive only if " ' "it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." ' " *Winningham*, 391 Ill. App. 3d at 484-85 (quoting *People v. Romero*, 387 Ill. App. 3d 954, 978 (2008), quoting *People v. Fern*, 189 Ill. 2d 48, 54 (1999)). We must keep in mind that the trial court was in a far better position to consider relevant sentencing factors because that court observed defendant and the proceedings, whereas we have only a cold record. *Winningham*, 391 Ill. App. 3d at 485.

¶ 56       There are many reported cases where defendants who were sentenced to prison for aggravated DUI resulting in death argued on appeal that they instead should have received probation. Given the deferential standard of review, the Illinois Appellate Court has universally rejected those arguments. See *Lawson*, 2018 IL App (4th) 170105, ¶ 29; *People v. Stutzman*, 2015

IL App (4th) 130889, ¶ 42; *People v. Rennie*, 2014 IL App (3d) 130014, ¶ 34; *People v. Hambrick*, 2012 IL App (3d) 110113, ¶ 23; *People v. Ikerman*, 2012 IL App (5th) 110299, ¶ 60; *Vasquez*, 2012 IL App (2d) 101132, ¶ 70; *Hill*, 2012 IL App (5th) 100536, ¶ 28; *Winningham*, 391 Ill. App. 3d at 485. Many of these cases involved individuals who had steady employment, dependents, little or no criminal history, and who were remorseful for their actions. A common thread through these cases is that aggravated DUI resulting in death is a very serious and preventable offense that warrants deterrence through sentencing offenders to prison. See, *e.g.*, *Winningham*, 391 Ill. App. 3d at 486 ("[T]hose who drive drunk must be on notice that, absent extraordinary circumstances, the penalty for depriving a person of her life as a result of drunk driving will be imprisonment.").

¶ 57        Section 11-501(d)(2)(G) of the Vehicle Code "creates the presumption that a convicted defendant shall serve a term of imprisonment," and the legislature's intent for including the language about extraordinary circumstances was "to limit the discretion of a trial court to impose a sentence of probation." *Hambrick*, 2012 IL App (3d) 110113, ¶ 21. There is no precise formulation for what constitutes extraordinary circumstances. As explained in *Vasquez*:

> "Extraordinary circumstances are, quite simply, those that are not ordinary. They are unusual. Our commonsense understanding is supported by Black's Law Dictionary, which defines 'extraordinary circumstances' as 'a highly unusual set of facts that are not commonly associated with a particular thing or event.' Black's Law Dictionary 260 (8th ed. 2004)." *Vasquez*, 2012 IL App (2d) 101132, ¶ 59.

It is only the "rare" case where extraordinary circumstances exist. *Ikerman*, 2012 IL App (5th) 110299, ¶ 59. Thus, "[t]he presence of mitigating factors does not equate to 'extraordinary circumstances.' " *Rennie*, 2014 IL App (3d) 130014, ¶ 31. In considering whether extraordinary circumstances exist that require probation, a trial court may consider whether "extraordinary

versions" of the statutory mitigating factors exist, along with any other relevant circumstances. *Vasquez*, 2012 IL App (2d) 101132, ¶ 62.

¶ 58    Here, the trial court recognized the relevant mitigating factors. For example, defendant had a relatively minor criminal history, and he was by all accounts an excellent employee and family man. He was also deeply remorseful for the loss of life. But these mitigating circumstances were no different from some of the cases mentioned above where reviewing courts upheld prison sentences. Defendant attempts to distinguish that case law by emphasizing his lack of culpability. For example, in his reply brief, defendant asserts that he "was engaged in behavior that seemed perfectly legal and innocuous—and would have been perfectly legal had he simply had a medical cannabis card."

¶ 59    We discern no abuse of discretion. The trial court found that the State failed to prove beyond a reasonable doubt that defendant drove impaired or recklessly. Nevertheless, cannabis was illegal for nonmedical use in 2018, and there is no indication defendant had a debilitating condition that might have entitled him to obtain a medical cannabis card. Defendant obviously knew there was cannabis in his system when he drove, as he said after the accident, "there's no way I'm passing a drug test." Essentially, defendant gambled when he drove that he was under the legal limit or that he would not get caught if he was over the limit. Defendant also did not have the required class of license for the vehicle he was driving. Thus, while we respect defendant's position that he was less culpable than a person who drives both impaired and recklessly, it is a stretch for him to claim that his behavior "seemed perfectly legal and innocuous."

¶ 60    Defendant faced up to 28 years in prison, and the trial court sentenced him to 6 years—the minimum available prison sentence. The court rejected the State's request to impose a much lengthier prison sentence, which indicates the court considered defendant's relative

culpability under the DUI statute. The sentence was neither greatly at variance with the spirit and purpose of the law nor manifestly disproportionate to the nature of the offense. Accordingly, we hold that the court did not abuse its discretion in fashioning the sentence or in considering whether the case involved extraordinary circumstances.

¶ 61 Although not mentioned by the parties, even if we agreed with defendant that the circumstances warranted probation, we could not grant him probation. Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) empowers us generally to reduce a criminal sentence. However, we lack the authority under Rule 615 to reduce a prison sentence to probation. *People v. Bolyard*, 61 Ill. 2d 583, 588 (1975); *Lawson*, 2018 IL App (4th) 170105, ¶¶ 24-25.

¶ 62                    2. *Section 5-4-1(c-1.5) of the Unified Code of Corrections*

¶ 63 Defendant also argues that the trial court misinterpreted section 5-4-1(c-1.5) of the Unified Code of Corrections (730 ILCS 5/5-4-1(c-1.5) (West 2022)) and that this statute applies to his circumstances. The State responds that the offense for which defendant was convicted was not the type of "victimless crime[ ]" the legislature had in mind when it enacted section 5-4-1(c-1.5). Moreover, the State asserts that "the interest of justice did not *require* a sentence of probation or lesser term of imprisonment" (emphasis in original), as "the facts of the case were not such that every reasonable person would have insisted on less punishment."

¶ 64 "We may affirm the judgment on any basis in the record, regardless of the circuit court's rationale." *People v. Prather*, 2022 IL App (4th) 210609, ¶ 32. Our objective when interpreting any statute is to ascertain and effectuate the legislature's intent. *People v. Ramirez*, 2023 IL 128123, ¶ 13. "The best evidence of legislative intent is the statutory language itself, which must be given its plain and ordinary meaning." *Ramirez*, 2023 IL 128123, ¶ 13. We review *de novo* matters of statutory interpretation. *Ramirez*, 2023 IL 128123, ¶ 13.

¶ 65 We hold that section 5-4-1(c-1.5) of the Unified Code of Corrections does not apply to the offense of aggravated DUI resulting in multiple deaths. Again, section 5-4-1(c-1.5) provides as follows, in relevant portion:

> "Notwithstanding any other provision of law to the contrary, *in imposing a sentence for an offense that requires a mandatory minimum sentence of imprisonment*, the court may instead sentence the offender to probation, conditional discharge, or a lesser term of imprisonment it deems appropriate if: (1) the offense involves the use or possession of drugs, retail theft, or driving on a revoked license due to unpaid financial obligations; (2) the court finds that the defendant does not pose a risk to public safety; and (3) the interest of justice requires imposing a term of probation, conditional discharge, or a lesser term of imprisonment." (Emphasis added). 730 ILCS 5/5-4-1(c-1.5) (West 2022).

Aggravated DUI resulting in multiple deaths does not require a mandatory minimum sentence of imprisonment. Instead, the DUI statute authorizes a trial court to sentence a violator to probation for that offense in "extraordinary circumstances." 625 ILCS 5/11-501(d)(2)(G) (West 2018). Thus, by its plain language, section 5-4-1(c-1.5) of the Unified Code of Corrections does not apply here.

¶ 66 III. CONCLUSION

¶ 67 For the reasons stated, we affirm the trial court's judgment.

¶ 68 Affirmed.

*People v. Lee*, 2023 IL App (4th) 220779

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Boone County, No. 18-CF-382; the Hon. C. Robert Tobin III, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Daniel J. O'Brien, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Tricia L. Smith, State's Attorney, of Belvidere (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |