NOTICE
Decision filed 11/24/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240194-U

NO. 5-24-0194

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 22-CF-361 |
| | ) | |
| DIVONTAE J. BAILEY, | ) | Honorable |
| | ) | Roger B. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE McHANEY delivered the judgment of the court.
Justices Barberis and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the defendant waived the issue of the trial court's consideration of improper factors in sentencing him because he failed to raise the issue with a contemporaneous objection during his sentencing hearing nor did he include the issue in his motion to reconsider his sentence, we affirm the defendant's sentence. Where the evidence in this case was not closely balanced, or the error so serious to affect the fairness of the trial and judicial process, we will not consider the improperly preserved issue under the plain-error doctrine. Where the defendant cannot establish the second prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), that the sentencing outcome would have been different if his attorney had objected to sentencing factors considered by the court, his ineffective assistance of counsel claim fails.

¶ 2    The defendant was charged with two related cases in 2022: attempted murder with a firearm (22-CF-1003), and armed violence, possession of a stolen firearm, aggravated unlawful use of a weapon, and resisting or obstructing a peace office causing injury (22-CF-361). After a jury trial, the defendant was acquitted of attempted murder. Later, in the remaining cases, the defendant

1

entered an open guilty plea to armed violence in exchange for dismissal of the other counts. The trial court sentenced the defendant to 17 years and 6 months in the Illinois Department of Corrections (IDOC). After the denial of the defendant's motion to reconsider sentence, he appealed. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On March 27, 2022, Champaign police received a report about a group of armed males near Oakwood Trace Apartments. While investigating the report, officers saw a white Range Rover speeding and violating other traffic laws. The officers pursued the vehicle but eventually lost sight of it. However, they later saw the same Range Rover driving in the opposite direction and obeying traffic laws. The officers surmised that the driver's current compliance with traffic laws meant that the driver must have dropped off a passenger. The officers then began looking for anyone walking in the area and discovered the defendant walking about one-half mile from the location of the original dispatch. He appeared to be holding a concealed object. The officers began following him, and he fled on foot, appeared to be hiding something, and ignored the officers' commands to stop. Officer McDonald eventually caught up to and tackled him. The officers discovered that he had a loaded Glock 22 semiautomatic gun in his pants pocket. Officers also found a stolen Springfield XD semiautomatic gun in a clothing donation box that the defendant had passed during the chase.

¶ 5      On March 28, 2022, Divontae Bailey (the defendant) was charged with four felonies: (1) armed violence (720 ILCS 5/33A-2(a) (West 2020)), a Class X felony; (2) possession of a stolen firearm (*id.* § 24-3.8(a)), a Class 2 felony; (3) aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C)), a Class 4 felony; and (4) resisting or obstructing a peace officer (*id.* § 31-1(a-7)). Thereafter on September 27, 2022, the State filed a fifth count: unlawful use of a weapon involving a machine gun (*id.* § 24-1(a)(7)(i), (b)). This charge stemmed from the

discovery of a gun on a balcony that was on the defendant's path of flight on March 27, 2022. That gun was a Glock pistol that had a switch device that could convert the weapon into a machine gun.

¶ 6    In a separate 2022 case, the State charged the defendant with attempted murder and aggravated battery with a firearm. That case proceeded to a jury trial in July 2023, and the defendant was acquitted of both charges.

¶ 7    On October 6, 2023, the defendant requested a Supreme Court Rule 402 (Ill. S. Ct. R. 402 (eff. July 1, 2012)) conference learn what sentence the trial court would likely impose if he pled open to the armed violence count. The trial court acknowledged that because the defendant was acquitted in the attempted murder case, the evidence from that case would have "a lot less weight," but the judge stated that he "would be a lot more convinced that [the defendant] was not present" if the defendant identified the shooter who had been driving his car before the shooting occurred. The court stated that because the defendant would not identify the shooter, the public was therefore at risk of this unknown shooter's violent tendencies. The court continued that if the defendant identified the shooter, that would be "a huge mitigating factor because he's putting himself at risk to help take some other probably more dangerous, or at least as dangerous, person off the street." After argument by both sides, the trial court stated that there were strong arguments about "what, if any, involvement" the defendant had with the shooting and the individuals involved, stating: "I suspect he has a lot more information about that than he's willing to even tell [defense counsel]." The court concluded that considering factors in aggravation and mitigation, the court would likely sentence the defendant to a 20- to 22-year term of imprisonment.

¶ 8    Before the Rule 402 conference, the trial court advised the defendant of the rights he would give up if pled guilty. Those rights included the right to have a speedy and public trial; the right to have the case tried by the court or by a jury; the right to present evidence on his own behalf; the

right to compel the attendance of witnesses on his behalf; the right to confront and cross-examine all witnesses called by the State; the right against self-incrimination; the right to continue to plead not guilty and require the State to prove each allegation of the crime(s) charged beyond a reasonable doubt; and the right to appeal. The court also advised him of the process required to seek a withdrawal of his guilty plea, if he opted to plead guilty, but later sought to have the judgment and sentence vacated.

¶ 9     At the conclusion of the Rule 402 conference, the defendant agreed to enter an open plea of guilty to armed violence in exchange for dismissal of the other counts. He confirmed his understanding that by pleading guilty he was giving up certain rights, except for the assistance of his attorney. The applicable sentencing range of 15 to 30 years was explained.

¶ 10    On November 28, 2023, the court held the defendant's sentencing hearing for armed violence. The court indicated that the defendant was pleading guilty to armed violence, a Class X felony, with a mandatory sentencing range of 15 to 30 years. The court took judicial notice of the testimony and exhibits presented at the earlier attempted murder trial and acknowledged that it had presided over that trial.

¶ 11    The State presented the attempted murder trial exhibits and transcripts as evidence in aggravation. The State argued that the defendant knew which gun was used in the drive-by shooting the day before he was arrested and attempted to cover up that evidence by tossing the gun onto a balcony. In support, the State pointed to a jail call recording where the defendant stated that he "threw a football," and argued that the defendant's use of the term "football" really meant the gun at issue. The State contended that this armed violence offense was greater than a "basic armed violence," because the defendant's actions injured an officer, and were part of a course of

4

conducted intended to cover up a significant shooting. The State argued the need for deterrence and recommended a 20-year sentence.

¶ 12    In mitigation, the defendant's attorney presented multiple letters of support from the defendant's family and friends. In addition, the defendant's attorney presented a certificate of completion of a substance abuse treatment program through the Kankakee County detention center. Defense counsel argued that the defendant did not know that the gun he threw had been used in a shooting the previous day. She maintained that while the case technically qualified as armed violence, the standard armed violence charge typically involved more serious underlying felonies. Here the underlying charge involved resisting an officer which resulted in a minor wrist injury. Defense counsel additionally argued that the more appropriate charge in this case would have been unlawful use of a weapon, a misdemeanor. In arguing for the minimum sentence of 15 years, defense counsel noted that the defendant had no criminal history and a very supportive family. The defendant took full responsibility for unlawfully carrying the gun, and stated that he was trying to fit in, but he never intended to hurt anyone.

¶ 13    The trial court found there were several factors in mitigation. The defendant was a model citizen for the first 20 years of his life and had been consistently employed since he was 16. The court stated that it suspected the defendant had been "roped" into hanging out with an older group who engaged in criminal activity and, based upon his statement of allocution, the court did not believe that his criminal conduct would likely recur. In aggravation, the court found that the defendant's conduct and involvement with guns risked significant harm. Additionally, despite the minor injury sustained by the officer, the defendant's conduct resulted in physical harm to another.

¶ 14    The trial court then made the following findings based on the attempted murder trial evidence. First, the court noted that the day before the drive-by shooting, the defendant's car and

5

a second vehicle were at a gas station. A total of five persons exited the two vehicles. The person who was in the driver's seat of the defendant's car was wearing a ski mask. The five individuals then entered the gas station where they confronted a man, who then left. Then, three of the five people, including the man in the ski mask, left the gas station, followed the man they confronted onto the interstate, and shot at the man's vehicle. During the trial, a police officer opined that the defendant was the individual wearing the ski mask, and thus, the defendant would have been one of the shooters. The court then reiterated that a jury acquitted the defendant.

¶ 15    The arrest in this case occurred the day after the shooting. A couple of days later, the Glock gun was located on a balcony near the defendant's path of flight from the officer. All 12 of the shell casings recovered from the area of the shooting matched the gun on the balcony. Moreover, the defendant's DNA was found on the gun. Regarding the defendant's potential involvement in the drive-by shooting, the court stated: "Whether [the defendant] was there or not, the jury found not. Whether he knew that the gun had been used at a shooting or he was doing his—his friend—a favor, I don't know. I don't need to know." The court then found that the evidence presented at the defendant's attempted murder trial was reliable and relevant and established that he had "some connection to that prior shooting, maybe only after the fact of trying to dispose of a gun that was used, whether he knew it was used in the shooting or not, there's a connection there." The court stated that it would give that connection to the drive-by shooting some weight, although the jury found him not guilty.

¶ 16    At the conclusion of the defendant's sentencing hearing, the court stated:

> "The recommendation by the State is not that far out of line, but I also think there's
>
> some merit to [defense counsel]'s argument that 15 is—is too much for this type of offense.

But there's also the aggravation of the involvement at a minimum of covering up or disposing of a gun that turned out to have been used in a shooting, whether [the defendant] was aware of that or not."

The trial court concluded that the appropriate sentence was 17 years and 6 months in IDOC following by a term of mandatory supervised release.

¶ 17 On December 14, 2023, the defendant filed a motion to reconsider his sentence, arguing that it was excessive, in part due to the trial court placing too much weight on evidence presented in aggravation. On January 31, 2024, the trial court denied the motion, and the defendant timely appealed.

¶ 18                                  II. ANALYSIS

¶ 19 On appeal, the defendant asks this court to reduce his sentence to 15 years or remand to the trial court to do so. He argues that his sentence should be lowered for two reasons. First, the trial court erroneously considered facts and evidence from the defendant's alleged involvement in the attempted murder case, for which he was acquitted. The court expressly found that the "evidence" of the defendant's alleged involvement in the attempted murder case was a factor in aggravation. Second, the trial court also found that the defendant both "caused harm" by running away from the police officer who sustained a wrist injury and "threatened harm" because the defendant was allegedly armed in public. The defendant argues that the "causing harm" and "threatening harm" elements were improperly considered in aggravation as both were elements of the armed violence charge to which he pled guilty. Seeking to avoid forfeiture, the defendant asks this court to review these issues under either the plain-error doctrine or as ineffective assistance of counsel.

¶ 20 The federal and Illinois constitutions guarantee fair sentencing hearings and sentences to individuals convicted of crimes. See U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2; *People*

7

*v. Simms*, 143 Ill. 2d 154, 170 (1991). The Unified Code of Corrections (730 ILCS 5/1-1-1 *et seq.* (West 2022)) lists mitigating and aggravating factors that the trial court must consider when determining an appropriate sentence. *People v. Brunner*, 2012 IL App (4th) 100708, ¶¶ 43-45. "The trial court's sentence must be based upon the particular circumstances of the case, including (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for punishment and deterrence." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 102. "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11.

¶ 21 A trial court's sentencing decision is generally reviewed with an abuse of discretion standard. *People v. Lee*, 2023 IL App (4th) 220779, ¶ 55; *People v. Lang*, 2023 IL App (2d) 220091, ¶ 40. A decision constitutes an abuse of discretion if it is "fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." (Internal quotation marks omitted.) *People v. Lawson*, 2018 IL App (4th) 170105, ¶ 28. "In considering the propriety of a sentence, the reviewing court must proceed with great caution and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently." *People v. Fern*, 189 Ill. 2d 48, 53-54 (1999) (citing *People v. Streit*, 142 Ill. 2d 13, 19 (1991)). "A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Id.* at 54. However, on appeal, if a sentencing judge considered an improper factor, the matter is reviewed *de novo*. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8. Moreover, if the trial court relied on improper factors in sentencing the defendant, on appeal, the court may reduce the

sentence or remand for resentencing. *People v. Zapata*, 347 Ill. App. 3d 956, 964 (2004); Ill. S. Ct. R. 615(b)(4) (eff. Jan. 1, 1967).

¶ 22    Initially, the State contends that the defendant waived the issue of whether the trial court relied on improper aggravating sentencing factors because he failed to raise this issue with a contemporaneous objection or include it in his motion to reconsider sentence. *People v. Williams*, 181 Ill. 2d 297, 322 (1998). We agree.

¶ 23    Supreme Court Rule 604(d) provides that "any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall be deemed waived." Ill. S. Ct. R. 604(d) (eff. July 1, 2017). In discussing Rule 604(d), the Illinois Supreme Court in *People v. Ratliff* stated:

"Rule 604(d) is unmistakably clear: Any issue not raised in a postplea motion is 'waived' on appeal. Though forfeiture may be a limitation on the parties, and not this court, we have never stated that the same is true of waiver, and with good reason. Forfeiture may be inadvertent—a failure to make a timely assertion of a right. See *Gallagher v. Lenart*, 226 Ill. 2d 208, 229 (2007). Waiver, by contrast, is never inadvertent because it is an intentional relinquishment of a right." *People v. Ratliff*, 2024 IL 129356, ¶ 26, *reh'g denied* (Jan. 27, 2025).

Because the defendant's motion to reconsider his sentence failed to raise the issue of the trial court's reliance on improper aggravating sentencing factors, we find that this issue has been waived.

¶ 24    The defendant asks us to review this issue as either plain error or as ineffective assistance of counsel. The Illinois Supreme Court has exhaustively addressed the plain-error doctrine, as follows:

9

" '[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. In the first instance, the defendant must prove "prejudicial error." That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. The State, of course, can respond by arguing that the evidence was not closely balanced, but rather strongly weighted against the defendant. In the second instance, the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. [Citation.] Prejudice to the defendant is presumed because of the importance of the right involved, "*regardless* of the strength of the evidence." (Emphasis in original.) [Citation.] In both instances, the burden of persuasion remains with the defendant.' " *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007) (quoting *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)). More recently, the Illinois Supreme Court stated that the plain-error rule constitutes " 'a narrow and limited exception' to procedural default." *People v. Jackson*, 2022 IL 127256, ¶ 27 (quoting *People v. Downs*, 2015 IL 117934, ¶ 15).

¶ 25    The defendant only seeks plain error review under the closely-balanced first prong, noting that the court stated that there was minimal aggravating evidence. "The first step in plain error review is to determine whether a clear or obvious error occurred." *People v. Finlaw*, 2023 IL App (4th) 220797, ¶ 47. The defendant argues that most of the aggravating evidence was based upon improper factors—facts from the attempted murder trial and elements implicit in the armed violence charge for which he was being sentenced. At sentencing, the trial court acknowledged the

10

defendant's acquittal of attempted murder and indicated that it would be giving the defendant's "connection to that shooting some weight, not too much weight because of the not guilty finding and my respect for the jury's verdict, but it will be a factor that the Court does consider in some way."

¶ 26    Here, there is no question that the trial court considered evidence from the defendant's attempted murder trial. As evidence in aggravation, the State asked the court to take judicial notice of the evidence and exhibits presented in that trial, without objection from the defendant's attorney. During the sentencing hearing, the court stated:

"I want to talk about the other evidence that I heard.

[The defendant] stood trial for attempted murder based on incidents that occurred back on March the 26th of 2021 [*sic*]. The jury found him not guilty, and that counts a lot.

There was evidence that would circumstantially connect him to that offense. There's certainly evidence suggesting that he was at least tangentially involved in attempting to cover up that offense.

There is no doubt that on March 26th of 2022, sometime between 11 p.m. and midnight, David Rodgers and Karissa Griffin were driving on Interstate 74 when one or most likely two people started firing at their car from a green Chrysler 300 causing significant damage to not only their car, but a lot of injuries to both Ms. Griffin and Mr. Rodgers.

The car crashed. They both had broken ribs, broken noses, damaged hands from bullet[s], and whatnot.

That car had just been in the Mach 1 gas station where Mr. Rodgers and Ms. Griffin were parked.

11

Five people entered that gas station and confronted Mr. Rodgers. Three of them ran out and got into that Chrysler 300.

Immediately prior to going into that gas station, someone wearing a ski mask got out of the driver's seat of a car that was registered to [the defendant], went into that gas station with the others, and then when Mr. Rodgers left, got into the backseat of the Chrysler.

A police officer testified that in his opinion, based upon the height, build—the height and build of [the defendant], which matched the person on video, as well as the way he walked, he had an opinion that [the defendant] was in fact the person in the backseat of that car, and that would have made him one of the two shooters.

The jury found that that was not proven beyond a reasonable doubt, and he was found not guilty. And I accept that jury's finding and will enter my rulings based upon it.

* * *

The—the standard seems to be that if the Court determines the evidence is relevant and reliable, it's up to the Court to decide what weight, if any, to give that evidence."

"The Defendant's conduct certainly risked significant harm. Any time you are in the public with guns, whether you have them because you're trying to fit in or because you think you need protection, it puts other people at risk. And, so, that is an aggravating factor.

* * *

As indicated, there's not much else aggravation and there is a significant amount of mitigation in this record.

I've already touched upon the fact that the Defendant has led a law-abiding life for a long time.

12

I cannot find that the conduct neither caused nor threatened serious physical harm.

We had an actual injury, whether it's a minor wrist injury or not, that's physical harm.

***

Certainly, his conduct was induced or facilitated by someone other than himself.

At a bare minimum, the person who asked him to hide the gun, if I accept the Defendant's explanation, induced or facilitated some of his conduct."

¶ 27    Generally, any relevant and reliable evidence is admissible at sentencing. *People v. Williams*, 149 Ill. 2d 467, 490 (1992). The trial court may consider evidence, including evidence of prior criminal activity in aggravation, so long as the evidence is reliable and relevant. *People v. Jett*, 294 Ill. App. 3d 822, 830 (1998). The fact that the State failed to meet its burden of proof in the defendant's attempted murder trial did not erase the evidence regarding the defendant's involvement with the gun used in that case, which was the foundation for the armed violence charge to which the defendant pled guilty. We find that the trial court did not commit error by relying on this evidence as an aggravating factor. Therefore, there can be no plain error. Accordingly, the defendant's request for plain error review of this unpreserved claim fails. *Finlaw*, 223 IL App (4th) 220797, ¶ 47. Because there was no error, the defendant's claim of ineffective assistance of counsel regarding this issue also fails.

¶ 28    The defendant argues that the trial court placed improper weight on two aggravating factors which were inherent to the armed violence charge: causing injury to another and threatening injury by possessing a gun. "Generally, a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense." *People v. Phelps*, 211 Ill. 2d 1, 12 (2004). "Stated differently, a single factor cannot be used both as an element of an offense and as a basis for imposing 'a harsher sentence than might otherwise have been

13

imposed' " *Id.* at 11-12 (quoting *People v. Gonzalez*, 151 Ill. 2d 79, 83-84 (1992)). This "double enhancement" rule is based on the assumption that the legislature already considered the factors inherent in the offense in "designating the appropriate range of punishment for a criminal offense." *Id.* at 12 (citing *People v. Rissley*, 165 Ill. 2d 364, 390 (1995)). Because the double-enhancement rule involves statutory construction, our review is *de novo*. *Id.* (citing *People v. Robinson*, 172 Ill. 2d 452, 457 (1996)). To the extent that the trial court considered an improper factor or factors in aggravation, that fact does not impact the framework of the sentencing hearing and is construed as a mere error in the sentencing process itself. *People v. Moon*, 2022 IL 125959, ¶ 29.

¶ 29    The sentencing range for the armed violence charge was 15 to 30 years. During the Rule 402 conference, the defendant learned that the trial court was contemplating a sentence of 20 to 22 years. The defendant immediately decided to enter an open guilty plea. The State asked for 20 years, while his attorney asked for 15. The trial court sentenced the defendant to 2 years and 6 months *below the State's request* and 12 years and 6 months *below the maximum*. Even if the aggravating evidence was not reliable and relevant (*Jett*, 294 Ill. App. 3d at 830), we find that the defendant cannot establish that the evidence was so closely balanced that the "error" alone threatened to tip the scales of justice. *People v. Sebby*, 2017 IL 119445, ¶ 51. Implicit in the defendant's argument is a requirement for the trial court to impose the minimum sentence available if little aggravating evidence is present. We are not aware of any case or statute mandating the imposition of a minimum sentence, even when substantial mitigation is present.

¶ 30    Finally, we turn to the defendant's contention that his attorney provided ineffective assistance by failing to object at the sentencing hearing to the trial court's consideration of aggravating factors inherent in the offense. "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the

14

deficient performance prejudiced the defendant." *People v. Cathey*, 2012 IL 111746, ¶ 23. This requires a defendant to show "that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). A failure to satisfy either *Strickland* prong "precludes a finding of ineffective assistance of counsel." *People v. Henderson*, 2013 IL 114040, ¶ 11. As such, failure to establish prejudice is a sufficient basis to deny a claim of ineffective assistance of counsel. *People v. Jackson*, 2020 IL 124112, ¶ 91.

¶ 31     Nothing in the record supports the defendant's argument that had the trial court not considered the officer's wrist injury it would have sentenced him to the minimum of 15 years. Accordingly, we find that the defendant's claim fails as he cannot establish the second *Strickland* prong—that a reasonable probability exists that the outcome would have been different. *People v. Manning*, 241 Ill. 2d 319, 326-27 (2011). As the defendant could not establish the second *Strickland* prong, his ineffective assistance claim fails. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000).

¶ 32                              III. CONCLUSION

¶ 33     For the above reasons, we affirm the sentencing decision of the Champaign County circuit court.


¶ 34     Affirmed.